# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TEXARKANA DIVISION

| | |
|---|---|
| DEXON COMPUTER, INC., | ) |
| Plaintiff | ) Civil Action No. 5:22-cv-00053-RWS-CMC |
| v. | ) |
| CISCO SYSTEMS, INC. and CDW CORPORATION, | ) |
| Defendants | ) |

## DEFENDANT CISCO SYSTEMS, INC.'S
## MOTION TO TRANSFER

RICHARD J. NELSON (*pro hac vice*)
LOUIS P. FEUCHTBAUM (*pro hac vice*)
SIDEMAN & BANCROFT LLP
One Embarcadero Center
Twenty-Second Floor
San Francisco, CA 94111-3711
(415) 392-1960
rnelson@sideman.com
lfeuchtbaum@sideman.com

DERON R. DACUS (Bar No. 00790553)
THE DACUS FIRM, PC
821 ESE Loop 323, Suite 430
Tyler, TX 75701
(903) 705-1177
ddacus@dacusfirm.com

AARON M. PANNER (*pro hac vice*)
ALEX A. PARKINSON (*pro hac vice*)
KYLIE C. KIM (*pro hac vice*)
RYAN M. FOLIO (*pro hac vice*)
KELLOGG, HANSEN, TODD,
   FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
apanner@kellogghansen.com
aparkinson@kellogghansen.com
kkim@kellogghansen.com
rfolio@kellogghansen.com

June 23, 2022

*Counsel for Cisco Systems, Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

I.  INTRODUCTION ........................................................................................................ 1

II. FACTS .......................................................................................................................... 1

    Procedural History ....................................................................................................... 1

    Dexon's Antitrust Claims ............................................................................................. 3

III. ARGUMENT ................................................................................................................ 6

    A.    The Facts And Issues Substantially Overlap ................................................... 8

    B.    The Parties Are Substantially Identical .......................................................... 10

    C.    There Is A Risk Of Piecemeal Litigation And Inconsistent Outcomes .......... 11

    D.    The Issues Dexon Raises Now Can Be And Already Have Been Decided
             In The Earlier-Filed Case .............................................................................. 13

IV. CONCLUSION ........................................................................................................... 14

## TABLE OF AUTHORITIES

Page

**CASES**

*Acceleron, LLC v. Egenera, Inc.*,
    2010 WL 11474372 (E.D. Tex. Jan. 26, 2010) .................................................................. 7, 8

*Alexander v. Franklin Res., Inc.*,
    2007 WL 518859 (N.D. Cal. Feb. 14, 2007) ....................................................................... 10

*Brantley v. NBC Universal, Inc.*,
    675 F.3d 1192 (9th Cir. 2012) ............................................................................................. 9

*Cadle Co. v. Whataburger of Alice*,
    174 F.3d 599 (5th Cir. 1999) ................................................................................. 6, 7, 10, 12

*California Sec. Co-Op, Inc. v. Multimedia Cablevision, Inc.*,
    897 F. Supp. 316 (E.D. Tex. 1995) ............................................................................ 7, 8, 11

*Cisco Sys., Inc. v. Dexon Computer, Inc.*,
    2022 WL 797015 (N.D. Cal. Mar. 16, 2022) ........................................................................ 3

*Cisco Sys. Inc. v. Dexon Computer, Inc.*,
    2021 WL 5848080 (N.D. Cal. Dec. 9, 2021) ..................................................................... 2, 9

*Clarendon Nat'l Ins. Co. v. Nat'l Trust Ins. Co.*,
    2018 WL 11258139 (E.D. Tex. Aug. 15, 2018) ................................................................. 7, 8

*Huntsman Corp. v. Int'l Risk Ins. Co.*,
    2008 WL 1836384 (E.D. Tex. Apr. 22, 2008) ....................................................................... 8

*Integra Techs. Int'l, Inc. v. Durst Image Tech. US LLC*,
    2009 WL 10669338 (W.D. Tex. Aug. 20, 2009) ............................................................... 9, 10

*Mann Mfg., Inc. v. Hortex, Inc.*,
    439 F.2d 403 (5th Cir. 1971) ................................................................................................ 8

*Mosaid Techs. Inc. v. Micron Tech., Inc.*,
    2008 WL 11348413 (E.D. Tex. July 2, 2008) .................................................................... 7, 8

*Needbasedapps, LLC v. Robbins Research Int'l, Inc.*,
    926 F. Supp. 2d 907 (W.D. Tex. 2013) ................................................................................ 7

*Save Power Ltd. v. Syntek Fin. Corp.*,
    121 F.3d 947, 951 (5th Cir. 1997) .................................................................................. 7, 10

*SIPCO, LLC v. Emerson Elec. Co.*,
    2016 WL 7743496 (E.D. Tex. July 1, 2016) .................................................................. 6, 11

*Stannard v. Nat'l Indoor RV Ctrs., LLC*,
    2018 WL 3608560 (E.D. Tex. July 27, 2018) ..................................................................... 7

*State Farm Mut. Auto. Ins. Co. v. Plunkett*,
    2011 WL 2670063 (N.D. Miss. July 7, 2011) .................................................................. 12

*Tech. Ins. Co. v. Ben E. Keith Co.*,
    2015 WL 4367597 (N.D. Tex. July 15, 2015) ................................................................... 8

*TravelPass Grp. LLC v. Caesars Ent. Corp.*,
    2019 WL 4071784 (E.D. Tex. Aug. 29, 2019) ................................................................. 10

*United States v. Safety Nat'l Cas. Corp.*,
    2010 WL 11595787 (W.D. Tex. Sept. 24, 2010) ......................................................... 9, 12

*Vertical Computer Sys., Inc. v. Interwoven, Inc.*,
    2011 WL 13141016 (E.D. Tex. May 10, 2011) ............................................................... 10

*West Gulf Mar. Ass'n v. ILA Deep Sea Local 24*,
    751 F.2d 721 (5th Cir. 1985) ............................................................... 6, 7, 8, 11, 12, 13

TO COUNSEL AND THIS HONORABLE COURT:  Defendant, Cisco Systems, Inc. ("Cisco") hereby brings this Motion to transfer this matter to the United States District Court for the Northern District of California.  Cisco and Dexon Computer, Inc. ("Dexon") have litigated substantially similar claims in that court – which has already rejected Dexon's theory of antitrust liability and injury on the merits – and transfer of this action to that court is required pursuant to the "first to file" rule.

## I.     INTRODUCTION

Cisco sued Dexon in the Northern District of California in July 2020, alleging that Dexon has been selling counterfeit Cisco products.  In July 2021, Dexon filed counterclaims against Cisco, including claims under Section 1 and Section 2 of the Sherman Act.  On December 9, 2021, Judge Breyer of the Northern District of California granted Cisco's motion to dismiss Dexon's antitrust claims pursuant to Rule 12(b)(6).  While Dexon has since filed two amended counterclaims that have included other federal and state claims, Dexon has not re-pleaded its antitrust claims in the Northern District of California.  Instead, Dexon refiled its antitrust claims in this Court.  Because the "first to file" rule bars such forum shopping, this Court should dismiss the complaint or transfer it to the Northern District of California, where litigation continues between Cisco and Dexon.

## II.    FACTS

### *Procedural History*

On July 22, 2020, Cisco filed suit against Dexon in the U.S. District Court for the Northern District of California.  *Cisco Systems, Inc. and Cisco Technology, Inc. v. Dexon Computer, Inc.,* No. 3:29-cv-4926 (the "California Lawsuit").  In the California Lawsuit, Cisco alleged that Dexon traffics in counterfeit Cisco products (including switches and transceivers) in

violation of the Lanham Act and California state law. On July 29, 2021, Dexon filed its Amended Answer, Affirmative Defenses, Counterclaims and Third Party Claims ("Dexon's California Counterclaims") [ECF 50, attached as Exhibit B], which included claims that Cisco violated Sections 1 and 2 of the Sherman Act by tying, monopolizing, and attempting to monopolize markets for Ethernet switches and routers.

On October 13, 2021, Cisco filed a Motion to Dismiss Dexon's California Counterclaims, pursuant to Rule 12(b)(6). [ECF 72, attached as Exhibit C] After the matter was fully briefed, the Court issued a thorough and well-reasoned opinion dismissing all of Dexon's claims for failure to state a claim. *See Cisco Sys. Inc. v. Dexon Computer, Inc.*, 2021 WL 5848080, at *5 (N.D. Cal. Dec. 9, 2021) ("*Cisco I*") (dismissing tying claims under Section 1 of the Sherman Act and California's Cartwright Act because "Dexon fails to plead a tying claim"); *see also id.* at *5-6 (dismissing monopolization and attempted monopolization claims under Section 2 of the Sherman Act because Dexon failed to plead that Cisco's conduct was anticompetitive); *see also id.* at *6 (dismissing all of Dexon's federal and state antitrust claims because "Dexon has not pleaded antitrust injury").

The court in the Northern District of California has allowed Dexon multiple opportunities to amend its counterclaims. In its December 9, 2021 Order that dismissed Dexon's antitrust claims (as well as all of Dexon's other federal and state counterclaims), the Court granted Dexon leave to amend. *See id.* at *9. On January 10, 2022, Dexon filed its Second Amended Answer, Affirmative Defenses, Counterclaims and Third-Party Claims ("Second Amended Counterclaims"). In that pleading, Dexon did not re-assert any antitrust claims. [ECF 92, attached as Exhibit D, (alleging counterclaims against Cisco for Lanham Act False Advertising, Intentional Interference with Contractual Relations, Intentional Interference with Prospective

Economic Advantage, and Trade Libel).] Cisco filed a motion to dismiss the Second Amended Claims under Rule 12(b)(6). [ECF 96, attached as Exhibit E] On March 16, 2022, after the matter had been fully briefed, the Court dismissed Dexon's Second Amended Claims for failure to state a claim. *See Cisco Sys., Inc. v. Dexon Computer, Inc.*, 2022 WL 797015, at *1 (N.D. Cal. Mar. 16, 2022) ("*Cisco II*"). Judge Breyer gave Dexon "leave to amend one last time." *Id.* at *8.

On April 6, 2022, Dexon filed its Third Amended Answer, Affirmative Defenses, Counterclaims and Third-Party Claims ("Third Amended Counterclaims"). Once again, Dexon chose not to re-plead any antitrust claims.[1] [ECF 107, attached as Exhibit F] On April 27, 2022, Cisco again moved to dismiss Dexon's Third Amended Counterclaims pursuant to Rule 12(b)(6).[2] [ECF 117, attached as Exhibit G] That same day, Dexon filed its Complaint in this Court. The Complaint alleges antitrust causes of action substantially similar to those Dexon asserted in its July 29, 2021 California Lawsuit that were ultimately dismissed by the district court in California.

### *Dexon's Antitrust Claims*

Most of the antitrust counterclaims that Dexon asserts in this matter are nearly identical to the claims that the Northern District of California dismissed in the California Action almost

---

[1] Dexon alleged counterclaims against Cisco for a Declaratory Judgment related to the legal status of Cisco's software, Lanham Act False Advertising, Intentional Interference with Contractual Relations, Intentional Interference with Prospective Economic Advantage, Trade Libel, and Trade Libel Per Se.

[2] Dexon opposed Cisco's motion [Exh. G], and it sought leave to file Fourth Amended Counterclaims [ECF 116, attached as Exhibit H]. On June 21, 2022, the court issued an order that dismissed Dexon's third amended counterclaims because Dexon again failed to state any legally cognizable claim, and it denied Dexon's motion for leave to file fourth amended counterclaims "because Dexon's amendments would be futile." [ECF 127, attached as Exhibit I, pp. 15, 17]

nine months earlier. In both actions, Dexon alleges: violations of the Sherman Act Section 1 for tying [*compare* Compl. ¶¶ 101-108, *with* Dexon's California Counterclaims, Exh. B ¶¶ 61-68]; unlawful monopolization under Section 2 of the Sherman Act [*compare* Compl. ¶¶ 109-114, *with* Dexon's California Counterclaims, Exh. B ¶¶ 60-74]; attempted monopolization in violation of Section 2 of the Sherman Act [*compare* Compl. ¶¶ 115-121, *with* Dexon's California Counterclaims, Exh. B ¶¶ 75-98]; and parallel state-law antitrust claims [*compare* Compl. ¶¶ 122-137, *with* Dexon's California Counterclaims, Exh. B ¶¶ 82-91].

Dexon's current complaint also contains brief and conclusory allegations that Cisco and a reseller, CDW, conspired to violate Section 1 of the Sherman Act by unreasonably restraining trade [Compl. ¶¶ 87-93], and Section 2 of the Sherman Act by maintaining Cisco's alleged monopoly in certain equipment markets [Compl. ¶¶ 94-100].

The factual allegations in the present complaint are likewise materially the same as the allegations that Dexon relied upon for its California Lawsuit — Dexon copied many of its allegations here from its California Counterclaims verbatim:[3]

| Paragraphs from Dexon's California Complaint | Paragraphs from Dexon's Texas Complaint | Nature of Allegation |
|---|---|---|
| ¶¶ 14-15 | ¶¶ 20-21 | Describing Cisco's relevant markets. |
| ¶ 16 | ¶ 22 | Describing the need for maintenance and service of Cisco products. |
| ¶ 17 | ¶ 23 | Claiming that Cisco maintains a premium price for its maintenance and service contracts. |
| ¶ 18 | ¶ 24 | Claiming that Cisco compels customers to purchase SmartNet service contracts. |
| ¶ 19 | ¶ 25 | Claiming that software updates are available only for customers who purchase SmartNet. |

---

[3] Attached, as Exhibit A, is a redline comparison of Dexon's California Counterclaims and the present complaint, which shows the close similarity of all material allegations.

4

| Paragraphs from Dexon's California Complaint | Paragraphs from Dexon's Texas Complaint | Nature of Allegation |
|---|---|---|
| ¶¶ 20-21 | ¶¶ 26-27 | Defining the supposed "Relevant Service Market." |
| ¶¶ 22-23 | ¶¶ 28-29 | Allegations related to Ethernet switches. |
| ¶¶ 24-26 | ¶¶ 30-32 | Claiming that Cisco has a monopoly on Ethernet switches. |
| ¶¶ 27-28 | ¶¶ 33-34 | Allegations related to "routers." |
| ¶ 29 | ¶ 35 | Allegation related to relevant router geographic market for antitrust analysis. |
| ¶ 30 | ¶ 36 | Claiming that Cisco has monopoly power in markets for routers. |
| ¶¶ 31-33 | ¶¶ 37-39 | There are high barriers to entry and expansion in the "Relevant Router and Switch Markets." |
| ¶¶ 34-35 | ¶¶ 40-41 | Reiterating claims that Cisco exercises control over the relevant markets, has a "practice of holding customers hostage" through SmartNet service packages, and exercises monopoly power. |
| ¶¶ 36-41 | ¶¶ 42-47 | Customers' alleged reliance upon SmartNet and related conduct by Cisco. |
| ¶¶ 45-47 | ¶¶ 49-51 | The benefit Cisco supposedly obtains through conduct related to sale of SmartNet and the effect that purportedly has on Cisco's customers. |
| ¶ 52 | ¶ 56 | Allegation that Cisco threatened a company [identified in the Texas Complaint as CDW] not to do business with Dexon; and, in response, that company re-assigned its employee who did business with Dexon to a different region and account. |
| ¶ 53 | ¶ 72 | Dexon's belief regarding the history of Cisco's conduct. |
| ¶ 54 | ¶ 73 | Alleged effect of re-certification fees on competition. |
| ¶ 55 | ¶ 74 | Alleged effect of Cisco's conduct on competition. |
| ¶ 56 | ¶ 75 | Alleged effect of Cisco's conduct upon a 911 operator. [The Texas Complaint identifies the 911 Operator as being in Texas.] |
| ¶ 57 | ¶ 76 | Alleged effects of Cisco's conduct on competition. |
| ¶¶ 58-60 | ¶¶ 77-79 | Dexon's supposed harm. |

The only arguable differences between Dexon's California Counterclaims and the present complaint are that, while Dexon's California Counterclaims include allegations regarding conduct involving an unnamed value added reseller, the present Complaint identifies that reseller

5

as CDW, adds allegations related to CDW, and names CDW as a defendant.[4] Dexon also attempts to provide additional detail describing some of the allegations it first raised in its various pleadings in the California Lawsuit.[5]

### III. ARGUMENT

This Court should transfer Dexon's complaint pursuant to the "first to file" rule because Dexon already asserted the claims in its complaint in the Northern District of California. *See, e.g., Cadle Co. v. Whataburger of Alice*, 174 F.3d 599, 606 (5th Cir. 1999) (holding that the second court should "transfer the case" to the first-filed court for resolution); *SIPCO, LLC v. Emerson Elec. Co.*, 2016 WL 7743496, at *4-5 (E.D. Tex. July 1, 2016) (Mitchell, M.J.) (transferring the second-filed action "to the first-filed court . . . to determine the resolution of the second-filed case"). The "first to file" rule avoids serial initiation and litigation of substantially similar cases, conflicting rulings, and piecemeal litigation. *See West Gulf Mar. Ass'n v. ILA Deep*

---

[4] The following redline excerpt provides an example of the changes between Dexon's California Counterclaims (at ¶ 52) and the present complaint (at ¶ 56), where Dexon inserted the name "CDW" for the phrase "VAR," which was used in the California Counterclaims: "Upon information and belief, as part of their conspiracy to exclude Dexon, Cisco demanded that CDW stop selling Networking Equipment and associated services to Dexon (which had previously been to both parties' benefit), and CDW agreed. Confirming this agreement, upon information and belief, when the ~~VAR~~CDW representative previously assigned to Dexon refused to comply with the (sic) Cisco's demand, ~~he was~~CDW assigned the representative to a different region and account so that Cisco would not fear that CDW had withdrawn from the conspiracy. This worked. Pursuant to the conspiracy, no CDW sales representative has fulfilled a Cisco order from Dexon since March 2021."

[5] The present complaint contains new allegations related to Cisco phones. [Compl. ¶¶ 24, 30, 44, 65, 69, 71-78, 134] However, all of Dexon's pleadings in the California lawsuit include factual allegations regarding Cisco phones, purportedly in support of other non-antitrust claims. [*See* Dexon California Counterclaims ¶ 121; Second Amended Counterclaims ¶ 138; Third Amended Counterclaims ¶ 169] For example, Dexon's Second and Third Amended Counterclaims in the California litigation and its Texas lawsuit all include allegations regarding phone transactions involving the Fort Bend Independent School District. [*Compare* Second Amended Counterclaims ¶ 138, and Third Amended Counterclaims ¶¶ 165-169, *with* Compl. ¶¶ 65-67, 86]

6

Case 5:22-cv-00053-RWS-CMC   Document 21   Filed 06/23/22   Page 11 of 20 PageID #: 90

*Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985); *see also Mosaid Techs. Inc. v. Micron Tech., Inc.*, 2008 WL 11348413, at *2 (E.D. Tex. July 2, 2008).

When applying the "first to file" rule, the court in which the second action is filed "decide[s] whether the moving party in the second-filed court has demonstrated a 'substantial overlap' between the two suits." *Stannard v. Nat'l Indoor RV Ctrs., LLC*, 2018 WL 3608560, at *1 (E.D. Tex. July 27, 2018). "If the moving party satisfies this overlap requirement, the second-filed court allows the first-filed court to 'resolve the question of whether both [cases] should be allowed to proceed.'" *Id.* (quoting *Cadle*, 174 F.3d at 605); *Clarendon Nat'l Ins. Co. v. Nat'l Trust Ins. Co.*, 2018 WL 11258139, at *1 (E.D. Tex. Aug. 15, 2018) (Schroeder, J.) (granting motion to transfer).

The factors relevant to substantial overlap are whether: (1) the "overall content" of both lawsuits overlaps to a substantial degree[6]; (2) some (or all) of the parties are the same in the two cases[7]; (3) there is a risk of piecemeal litigation or inconsistent outcomes[8]; and (4) the issues in the second-filed case can be decided in the first-filed court.[9] These factors require transfer of Dexon's antitrust case to the Northern District of California.

---

[6] *See Acceleron, LLC v. Egenera, Inc.*, 2010 WL 11474372, at *2 (E.D. Tex. Jan. 26, 2010) (cases "involve substantially overlapping questions and core issues"); *California Sec. Co-Op, Inc. v. Multimedia Cablevision, Inc.*, 897 F. Supp. 316, 317-18 (E.D. Tex. 1995) (Folsom, J.) (granting motion to transfer).

[7] *See Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 951 (5th Cir. 1997); *Needbasedapps, LLC v. Robbins Research Int'l, Inc.*, 926 F. Supp. 2d 907, 915 (W.D. Tex. 2013) ("While the parties need not be identical to find 'substantial overlap,' the near identity of these parties certainly weighs in favor of such a finding.").

[8] *Cadle*, 174 F.3d at 606 (court in the second-filed case properly refused to act as a "super appellate court" by avoiding a potential inconsistent ruling with the first-filed court).

[9] *Needbasedapps*, 926 F. Supp. 2d at 915 ("Because all of the defendants in the Texas Lawsuit are subject to the personal jurisdiction of the United States District Court for the Central District of California, [counterclaimant] can obtain the same relief it seeks in Texas by filing counterclaims in the California action.").

### A. The Facts And Issues Substantially Overlap

This first factor favors dismissal or transfer because "the two pending actions [are] so duplicative or . . . involve such substantially similar issues that one court should decide the subject matter of both actions." *Huntsman Corp. v. Int'l Risk Ins. Co.*, 2008 WL 1836384, at *4 (E.D. Tex. Apr. 22, 2008) (internal quotations and citation omitted); *see also Clarendon Nat'l Ins.*, 2018 WL 11258139, at *1; *Tech. Ins. Co. v. Ben E. Keith Co.*, 2015 WL 4367597, at *2 (N.D. Tex. July 15, 2015) ("Corresponding 'threshold issues' are sufficient to raise the possibility of substantial overlap."); *Acceleron, LLC v. Egenera, Inc.*, 2010 WL 11474372, at *2 (E.D. Tex. Jan. 26, 2010) (granting transfer where the two actions involved "substantially overlapping questions and core issues").

This factor favors transfer where the core issues or the proof adduced would be the same in the second-filed case as in the prior-filed case. *See West Gulf Mar. Ass'n*, 751 F.2d at 730 (core issue was the same); *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407-08 (5th Cir. 1971) (reversing district court and ordering transfer of second-filed action, where overall content of multiple patents was likely to overlap to substantial degree in the two actions); *Mosaid Techs.*, 2008 WL 11348413, at *3 (granting motion to transfer in patent case where the technology in both actions overlapped, even though the actual patents being asserted were not identical). As Judge Folsom wrote in *California Security Co-Op, Inc. v. Multimedia Cablevision, Inc.*, 897 F. Supp. 316, 318 (E.D. Tex. 1995), granting a motion to transfer is appropriate if the plaintiff filing the second complaint "is alleging essentially the same conduct [ ] but has simply discovered a potential alternate route to recovery."

Both the California lawsuit and the present complaint involve nearly identical antitrust claims and claimed damages, and both arise from the same alleged business practices that Dexon

8

claims violate the antitrust laws. The overlap in the foregoing chart shows that, if the two cases were filed in this district, then they would undoubtedly be consolidated – satisfying this factor in favor of transfer or dismissal. *See United States v. Safety Nat'l Cas. Corp.*, 2010 WL 11595787, at *1 (W.D. Tex. Sept. 24, 2010) ("A substantial relationship exists between two suits where the issues, though not identical, are similar enough that the cases would be consolidated if filed in the same court.").

Allowing the present lawsuit to proceed would require a finding that directly conflicts with Judge Breyer's holding that Dexon's substantively identical allegations did not plausibly allege an antitrust injury. *See Cisco I*, 2021 WL 5848080, at *6 (finding that Dexon has not pleaded that it was harmed by anticompetitive conduct). An antitrust claim requires a plaintiff to "allege both that defendant's behavior is anticompetitive and that plaintiff has been injured by an 'anticompetitive' aspect of the practice under scrutiny." *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1200 (9th Cir. 2012) (internal quotations omitted). Another federal court has already determined that Dexon has done neither in a ruling that would necessarily conflict with allowing Dexon to proceed past the pleadings here.

The court's decision granting a motion to transfer in *Integra Technologies International, Inc. v. Durst Image Technology US LLC*, 2009 WL 10669338 (W.D. Tex. Aug. 20, 2009), is instructive. In that case, Durst first sued Integra in the Southern District of New York, for trademark infringement, unfair competition, and other causes of action. While that case was pending, Integra brought a lawsuit in the Western District of Texas, alleging that Durst violated the Sherman Act and other causes of action. The court determined that "[w]hile the claims asserted in each case may not arise out of the 'same transaction or occurrence,' that is not the test for the first-to-file rule." *Id.* at *1. "Given the similarities described above, this Court would

9

likely consolidate the cases if it had jurisdiction over both, and thus finds the purposes of the first-to-file rule, namely 'principles of comity and sound judicial administration,' best served by transferring this case to New York." *Id.* (quoting *Cadle*, 174 F.3d at 603).  The case for transfer is far stronger here because there is overlap of parties and allegations sufficient to warrant consolidation (and thus transfer) *and* – unlike *Integra* – Dexon *itself* has brought substantially similar antitrust claims in both lawsuits (having lost in the first-filed court where litigation is ongoing).  Such naked forum-shopping warrants transfer (or dismissal).  *See Alexander v. Franklin Res., Inc.*, 2007 WL 518859, at *4 (N.D. Cal. Feb. 14, 2007) ("One could reasonably infer forum shopping here, where the same plaintiff represented by the same law firm filed a similar lawsuit in New Jersey, and after receiving unfavorable rulings from that court, filed the instant case.").

### B.     The Parties Are Substantially Identical

This factor also favors transfer because Dexon and Cisco are both before the district court in California.  The presence of CDW as a named defendant in this case is of no legal consequence because the first-filed rule does not require *identical* parties where the issues substantially overlap.  *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 951 (5th Cir. 1997) ("Complete identity of parties is not required for dismissal or transfer of a case filed subsequently to a substantially related action."); *Vertical Computer Sys., Inc. v. Interwoven, Inc.*, 2011 WL 13141016, at *2 (E.D. Tex. May 10, 2011) ("a party cannot circumvent the policies underlying the first-to-file rule by merely tacking on an additional defendant in a later, duplicative action"); *but cf. TravelPass Grp. LLC v. Caesars Ent. Corp.*, 2019 WL 4071784, at *5-6 (E.D. Tex. Aug. 29, 2019) (Schroeder, J.) (denying transfer where different plaintiff brought later-filed action).  As Judge Folsom noted, adding an additional defendant is

immaterial where the cases overlap substantively, particularly where (as here) the first-filed case referenced (but did not name) the defendant added to the second-filed lawsuit. *See Cal. Sec. Co-op*, 897 F. Supp. at 318 (granting transfer where the added party was referenced in the first-filed case, and when that party was named as a defendant in the second-filed case, but "the subject matter did not change").

The references in Dexon's California Counterclaims to CDW, albeit not by name, indicate that the overlap in parties is even more complete than might first appear. Dexon's present complaint replaces allegations that a "VAR" (an acronym for "Value Added Reseller", a reseller of Cisco products) cooperated with Cisco and ceased doing business with Dexon, with allegations naming CDW. *See supra* note 4. Such changes in wording "are differences in form rather than substance and it is unquestionable that the two actions are duplicative and overlap substantially if not completely." *Cal. Sec. Co-op*, 897 F. Supp. at 318; *see also SIPCO*, 2016 WL 7743496, at *3 n.4 (finding substantial similarity notwithstanding inclusion of additional parties in second-filed action where allegations against new defendant were "limited . . . to the purchase and use of [Smart Wireless] products, which are already accused of infringement in [the first-filed action]"). Accordingly, the substantial overlap of the parties between the two actions favors transfer.

### C. There Is A Risk Of Piecemeal Litigation And Inconsistent Outcomes

The "first to file" doctrine aims to avoid duplicative rulings and avoid piecemeal resolution of disputes; both considerations warrant transfer here. *West Gulf Mar. Ass'n*, 751 F.2d at 729-31 (warning against resolving issues piecemeal among multiple districts and creating disharmony among the federal courts). "As between federal district courts, . . . the general principle is to avoid duplicative litigation," *id.* at 728 (internal quotations and citation

omitted), and deter forum shopping. *See Safety Nat'l Cas.*, 2010 WL 11595787, at *2 (transferring case alleging breach of 10 immigration bonds pursuant to "first to file" rule where the Southern District of Texas was hearing case involving 1400 alleged breaches observing that "it appears that *DHS was unhappy with Judge Ellison's rulings and seeks a different venue hoping for a better result*," but "[t]he first-to-file rule is designed to *prevent such forum shopping*") (emphasis added); *see also State Farm Mut. Auto. Ins. Co. v. Plunkett*, 2011 WL 2670063, at *3 (N.D. Miss. July 7, 2011) ("Filing suit in one court while the same action is pending before another judge in the same district will *inevitably lead to what can be seen as 'judge shopping' or 'forum shopping.'* In order to eliminate the risk of such, the Court exercises its direction and transfers this case to [the first filed court] for proper resolution of this cause of action.") (emphasis added).

Transfer to the first-filed court is particularly appropriate where, as here, the court with the first-filed case has already exercised jurisdiction over the parties. *See Cadle*, 174 F.3d at 604-05. Dexon filed antitrust counterclaims in the Northern District of California, contending that those claims arose from the same controversy as do the allegations in Cisco's complaint before that court. [Dexon's California Counterclaims, Exh. B ¶ 13] Now, Dexon asks this Court to be a "super appellate court," *Cadle*, 174 F.3d at 606, hoping it will decide issues common to both cases in a way contrary to those of another federal court. Such "trenching on the authority of its sister court" must be avoided. *Id.*; *see also West Gulf Mar. Ass'n*, 751 F.2d at 732 (second court should avoid "pass[ing] on" the merits of decision by judge in the first-filed case).

The risk of inconsistent outcomes is significant here because the Northern District of California already examined and dismissed Dexon's antitrust claims – Dexon is *necessarily* seeking a contrary ruling. Further, the outcome of Cisco's still-ongoing Lanham Act claims

12

against Dexon in the California lawsuit could be highly relevant to this Court's evaluation of Dexon's antitrust claims. Should Cisco's motion to transfer be denied, Cisco may assert as affirmative defenses before this Court that the conduct Dexon alleges to be in violation of federal and Texas antitrust law protects consumers from counterfeit and unlicensed products, like those that Dexon allegedly distributes. The close legal nexus between Cisco's Lanham Act claims against an unauthorized reseller of Cisco products and Dexon's challenge to the legality of Cisco's policies regarding unauthorized resale means that trying the two claims separately would expose the parties to the risk of inconsistent results.

> **D.    The Issues Dexon Raises Now Can Be And Already Have Been Decided In The Earlier-Filed Case**

To avoid duplication and preserve judicial resources, the court in the second-filed case "may dismiss an action where the issues presented can be resolved in an earlier-filed action pending in another district court." *West Gulf Mar. Ass'n*, 751 F.3d at 729. Here, there is a pending action (the California lawsuit) in which the issues presented by Dexon can be resolved, and in fact where substantially similar antitrust claims have *already been* resolved. That ongoing litigation has been pending for nearly two years, and both the parties and the court have spent significant resources. The parties have fully briefed the legal issues, which Judge Breyer ruled on late last year. If Dexon thinks its present claims are meritorious modifications to the antitrust counterclaims that the Northern District of California dismissed, then Dexon could have amended those antitrust counterclaims (as Judge Breyer permitted) in the Northern District of California. Dexon should not be afforded an opportunity to file substantially the same claims here that a federal judge has already considered and dismissed.

13

## IV. CONCLUSION

For the foregoing reasons, and any others that this Court may consider just, Dexon's lawsuit should be transferred to the Northern District of California.

Dated: June 23, 2022

Respectfully submitted,

*/s/ Deron R. Dacus*
DERON R. DACUS (Bar No. 00790553)
THE DACUS FIRM, PC
821 ESE Loop 323, Suite 430
Tyler, TX 75701
(903) 705-1177
ddacus@dacusfirm.com

AARON M. PANNER (*pro hac vice*)
ALEX A. PARKINSON (*pro hac vice*)
KYLIE C. KIM (*pro hac vice*)
RYAN M. FOLIO (*pro hac vice*)
KELLOGG, HANSEN, TODD,
 FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
apanner@kellogghansen.com
aparkinson@kellogghansen.com
kkim@kellogghansen.com
rfolio@kellogghansen.com

RICHARD J. NELSON (*pro hac vice*)
LOUIS P. FEUCHTBAUM (*pro hac vice*)
SIDEMAN & BANCROFT LLP
One Embarcadero Center
Twenty-Second Floor
San Francisco, CA 94111-3711
(415) 392-1960
rnelson@sideman.com
lfeuchtbaum@sideman.com

*Attorneys for Defendant Cisco Systems, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served on this June 23, 2022 with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.


                                              */s/ Deron R. Dacus*
                                              Deron R. Dacus

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for Cisco Systems, Inc. has complied with the meet-and-confer requirement in Local Rule CV-7(h).  On June 22, 2022, counsel for Cisco Systems, Inc. (Aaron M. Panner) met and conferred with counsel for Dexon Computer, Inc. (David Reichenberg), during which counsel for Dexon Computer, Inc. stated that Dexon Computer, Inc. will oppose the motion because Dexon Computer, Inc. does not think transfer to the United States District Court for the Northern District of California is warranted.  Accordingly, discussions between the parties on this topic have conclusively ended in an impasse as between Cisco Systems, Inc. and Dexon Computer, Inc. – counsel for CDW Corporation has informed counsel for Cisco Systems, Inc. that CDW Corporation will not oppose the foregoing motion – leaving an open issue for the court to resolve.

*/s/ Deron R. Dacus*
Deron R. Dacus