**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| **DEXON COMPUTER, INC.** | § | |
| *Plaintiff* | § | |
| **v.** | § | **CASE NO. 5:22-CV-53-RWS-JBB** |
| | § | |
| **CISCO SYSTEMS, INC. and** | § | |
| **CDW CORPORATION** | § | **JURY TRIAL DEMANDED** |
| *Defendants* | § | |

## JOINT CONFERENCE REPORT

Plaintiff Dexon Computer, Inc. ("Dexon") and Defendants Cisco Systems, Inc. ("Cisco") and CDW Corporation ("CDW") or (collectively, "Defendants") submit this Joint Conference Report pursuant to the Court's Orders dated July 15, 2022 (Dkt. 33) and August 9, 2022 (Dkt. 45) and provide the following information regarding the parties' case management plan:

a. **Rule 26(f) Conference:** The Rule 26(f) Conference was held on August 4, 2022 by videoconference.  The following attorneys attended said conference:

| **Plaintiff – Dexon Computer, Inc.** | David H. Reichenberg (*pro hac vice*)<br>Tina P. Lapsia (*pro hac vice*)<br>**Manatt, Phelps, & Phillips LLP**<br>7 Times Square<br>New York, NY 10036<br>Phone:  (212) 790-4626<br>dreichenberg@manatt.com<br>tlapsia@manatt.com |
|---|---|
| **Defendant – Cisco Systems, Inc.** | Andrew E. Goldsmith (*pro hac vice*)<br>Alex A. Parkinson (*pro hac vice*)<br>KELLOGG, HANSEN, TODD,<br>FIGEL & FREDERICK, P.L.L.C.<br>1615 M Street, N.W., Suite 400<br>Washington, D.C. 20036<br>Telephone: (202) 326-7900<br>Facsimile: (202) 326-7999<br>agoldsmith@kellogghansen.com<br>aparkinson@kellogghansen.com |
| **Defendant – CDW Corporation** | Cole A. Riddell<br>Texas Bar No. 24105423<br>HALTOM & DOAN<br>6500 Summerhill Road, Suite 100<br>Texarkana, TX 75503<br>Telephone: (903) 255-1000<br>Facsimile: (903) 255-0800<br>Email: jdoan@haltomdoan.com<br>Email: criddell@haltomdoan.com<br><br>James A. Reeder, Jr.<br>Texas Bar No. 16695010<br>JONES DAY<br>717 Texas, Suite 3300<br>Houston, Texas 77002<br>Telephone: (832) 239-3939<br>Fax: (832) 239-3600<br>Email: jareeder@jonesday.com<br><br>Thomas D. York<br>Texas Bar No. 24095531<br>JONES DAY<br>2727 N. Harwood Street<br>Dallas, TX 75201<br>Telephone: (214) 969-4523<br>Fax: (214) 969-5100<br>Email: tdyork@jonesday.com |

b. **Unrepresented Parties**

Not applicable.

c. **Correct names of parties:**

| | |
|---|---|
| Plaintiff: | Dexon Computer, Inc. |
| Defendant: | Cisco Systems, Inc. |
| Defendant: | CDW Corporation |

d. **Related Cases:**

Plaintiff's Position:

Plaintiff has been sued by Defendant Cisco in the Northern District of California under claims of trademark infringement, trademark counterfeiting, false designation of origin and associated state law violations. *See Cisco Sys., Inc. & Cisco Tech., Inc. v. Dexon Comput., Inc.*, No. 3:29-cv-4926, Dkt. No. 32 (N.D. Cal.).  Plaintiff directs the Court to its Opposition to Cisco's Motion to Transfer Venue (Dkt. 21) for the various reasons the *Cisco* case is not sufficiently related to merit transfer. *See* Dkts. 25, 35.  As provided in the Opposition, Plaintiff objects to the notion that the current action should be transferred to the Northern District of California under the "first-to-file" rule because the allegedly substantially similar claims are no longer at issue in *Cisco*, and in any case are not substantially similar. See Dkt. 25 at 9-16.

Defendants' Position:

Defendant Cisco Systems, Inc. sued Plaintiff Dexon Computer, Inc. in the Northern District of California, alleging that Dexon sells counterfeit Cisco products.  Dexon filed antitrust counterclaims that were substantially similar to the antitrust claims that Dexon filed in this lawsuit approximately nine months later.  Those claims were dismissed by Judge Breyer in the Northern

3

District of California.  *See Cisco Sys., Inc. v. Dexon Computer, Inc.*, 2021 WL 5848080 (N.D. Cal. Dec. 9, 2021).  Defendants respectfully direct the Court to Cisco's Motion To Transfer (Dkt. 21) – and CDW Corporation's related Notice of Joinder (Dkt. 27) – which explains why the first-to-file rule warrants transfer of this lawsuit to the Northern District of California, where Dexon has already filed substantially similar antitrust claims.

 e. **Description of case and claims and defenses:**

Plaintiff's Position:

Plaintiff alleges that Defendant Cisco is a monopolist in several Worldwide and US markets related to networking equipment and services for the Internet and locks in customers who require maintenance with Cisco's SmartNet program to make supracompetitive purchases of routers and Ethernet switches. *See, e.g.*, Dkt. 1 at ¶¶ 23-49.  Plaintiff claims that Cisco employed FUD tactics, especially in Texas, to foreclose competitive purchases of any product and maintain supracompetitive pricing for its products.  *Id.* ¶ 67.  In carrying out its scheme, Cisco conspired with Defendant CDW to sell Cisco equipment in the Relevant Networking Markets to maintain its supracompetitive pricing in those Markets and exclude other resellers from making sales in the Relevant Networking Equipment Market to end user customers in violation of federal and state antitrust laws. *Id.* ¶¶ 56-57.

Plaintiff asserts that the agreement orchestrated by Defendants reflects an unreasonable restraint of trade and a conspiracy to monopolize that is unlawful under Section 1 of the Sherman Act, 15 U.S.C. § 1, and under Section 2 of the Sherman Act, 15 U.S.C. § 2. *See, e.g.*, *id*. at ¶¶ 87-100. Plaintiff also asserts claims under Section 1 of the Sherman Act for *per se* tying in the Relevant Product Markets, under Section 2 of the Sherman Act for unlawful monopolization of the Relevant Networking Equipment Markets and for unlawful attempted monopolization of the Relevant Product Markets against Cisco, and under the Texas Free Enterprise and Antitrust Act against Cisco and CDW.  *Id.* at

¶¶ 87-128.  Plaintiff seeks injunctive relief, damages and costs in connection with such violations. *See* Prayer for Relief.

> Defendants' Position:

Defendants deny liability, deny they entered into any conspiracy, deny that Dexon suffered any antitrust injury, and deny damages.  Dexon asserts antitrust claims that have already been considered and rejected by Judge Breyer in parallel litigation between Cisco and Dexon in the Northern District of California.  *Cisco Sys., Inc. v. Dexon Computer, Inc.*, 2021 WL 5848080 (N.D. Cal. Dec. 9, 2021).  In his December 9, 2021 order, Judge Breyer dismissed Dexon's antitrust counterclaims – substantially similar to those Dexon asserts here – on the grounds that Dexon failed to plausibly allege any anticompetitive conduct or that it had suffered antitrust injury.  Those claims have now been dismissed with prejudice, and because Judge Breyer's holdings apply equally to Dexon's claims here, they are barred by the rule against claim-splitting (as to Cisco) and the doctrine of collateral estoppel (as to CDW).

In addition, for the reasons described by Judge Breyer's order and other independent reasons, each of Dexon's six causes of action fail to state a claim for relief:

Count I:  Dexon alleges that Cisco and CDW engaged in an unlawful conspiracy in restraint of trade, violating Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.  Defendants have moved to dismiss this claim for failure to allege any unlawful agreement.  If the claim is allowed to proceed, Defendants will show (among other legal and factual defenses) that any agreement between Cisco and CDW is categorically lawful and does not restrain competition in any relevant market in violation of Section 1 of the Sherman Act.  Dexon also has not established antitrust injury.

Count II:  Dexon alleges that Cisco and CDW engaged in an unlawful conspiracy to monopolize, violating Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2.  Defendants have

moved to dismiss this claim for failure to allege any unlawful agreement.  If the claim is allowed to proceed, Defendants will show (among other legal and factual defenses) that any agreement between Cisco and CDW is categorically lawful and does not reduce competition in any relevant market in violation of Section 2 of the Sherman Act.  Dexon also has not established antitrust injury.

Count III:  Dexon alleges that Cisco engaged in unlawful tying, violating Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.  Cisco has moved to dismiss this claim on the basis that Dexon has not alleged any foreclosure of competitors from the alleged equipment markets.  If the claim is allowed to proceed, Cisco will show (among other legal and factual defenses) that Dexon cannot establish an unlawful tie compelling customers to purchase Cisco equipment (instead of other manufacturers' equipment) in order to receive contracted-for service, as Dexon alleges, and that legitimate business justifications provide pro-competitive reasons for Cisco's challenged conduct. Dexon also has not established antitrust injury.

Count IV:  Dexon alleges that Cisco engaged in unlawful monopolization, violating Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2.  Cisco has moved to dismiss this claim on the basis that Dexon has not alleged any foreclosure of competitors from the alleged equipment markets.  If the claim is allowed to proceed, Cisco will show (among other legal and factual defenses) that Dexon cannot establish any unlawful exclusionary conduct by Cisco; Cisco will further show that legitimate business justifications, including justifications that arise specifically from Dexon's violations of Cisco's valuable trademarks and other intellectual property rights, provide pro-competitive reasons for Cisco's conduct.  Dexon also has not established antitrust injury.

Count V:  Dexon alleges that Cisco engaged in unlawful attempted monopolization, violating Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2.  Cisco has moved to dismiss this claim on the basis that Dexon has not alleged any foreclosure of competitors from the alleged equipment markets.

If the claim is allowed to proceed, Cisco will show (among other legal and factual defenses) that Dexon cannot establish any unlawful exclusionary conduct by Cisco; Cisco will further show that legitimate business justifications, including justifications that arise specifically from Dexon's violations of Cisco's valuable trademarks and other intellectual property rights, provide pro-competitive reasons for Cisco's conduct.  Dexon also has not established antitrust injury.

Count VI: Dexon alleges that CDW and Cisco violated the Texas Free Enterprise and Antitrust Act.  Defendants will show that this claim fails because of the same legal and factual deficiencies that preclude the foregoing claims, including that Dexon has not established antitrust injury, as it must under Texas law.

f. **Basis of Federal Jurisdiction**:

Plaintiff's Position:

This Court has Court has jurisdiction over Plaintiff's antitrust claims under 28 U.S.C. §§ 1331, 1337, and Sections 4 and 12 of the Clayton Act, 15 U.S.C. §§ 15(a) and 22. This Court has supplemental jurisdiction over the state law claims alleged in the Complaint under 28 U.S.C. § 1367(a) because the state law claim forms part of the same case or controversy as the federal claims. *See* Dkt. 1.

Defendants' Position:  Defendants do not currently dispute that the Court has subject-matter jurisdiction.

g. **Parties Who Disagree with Plaintiff's Jurisdictional Allegations and Reasons for Disagreement**:

Plaintiff directs the Court to its Opposition to Defendants' Motion to Transfer Venue (Dkt. 21) for the various reasons this Court is the proper venue for this matter.  See Dkt. 25.  As provided in Plaintiff's Response, this Court should not transfer the case to the District where an action involving some of the same parties but currently none of the same claims is pending.

<u>Defendants' Position</u>:

Defendants respectfully direct the Court to Cisco's Motion To Transfer (Dkt. 21) and CDW Corporation's related Notice of Joinder (Dkt. 27), which explain why the first-to-file rule requires transfer of this lawsuit to the Northern District of California.

h. **<u>Potential Additional Parties</u>**:

<u>Plaintiff's Position</u>:

Plaintiff does not anticipate adding any other parties to the case at this time. Plaintiff reserves the right to amend and join additional and/or necessary parties to this action pursuant to the Docket Control Order, the Federal Rules, or as the Court may permit.

<u>Defendants' Position</u>:

Defendants do not currently anticipate joining additional parties, without prejudice to doing so later as the Federal Rules, Local Rules, the Docket Control Order, or the Court may permit.

i. **<u>Anticipated Intervenors</u>**:

The parties are not aware of any potential intervenors at this time.

j. **<u>Class-Action or Collective-Action Issues</u>**:

There are not any class-action or collective action issues of which the parties are aware.

k. **<u>Exemption from Initial Disclosures</u>**:

The parties are not exempt from initial disclosures under Rule 26(a)(1)(B).

l. **<u>Disagreements on Discovery Plan</u>**:

The parties have attached: a Discovery Order, attached to this Joint Report as Exhibit A; Defendants' proposed Docket Control Order, attached as Exhibit B; and Plaintiff's proposed Docket Control Order, attached as Exhibit C. The parties have submitted a Proposed Protective Order to the Court. The parties have included in this case management plan their respective

positions on disputed issues.

Dexon's Position Regarding the Number of Permitted Interrogatories

In the meet and confer Dexon and Cisco completed with respect to the Proposed Protective Order, counsel for Cisco alerted Dexon that it was not possible for Cisco to search for documents relating to Dexon ("Dexon documents") by doing any kind of electronic search for the word "Dexon" across its electronically stored information (ESI) (in contrast to CDW who was able to complete such a search).  Cisco's counsel also would not propose specifics for any type of search that would ensure that Cisco is capturing all potentially relevant custodians who are in possession of Dexon documents, which would make the discovery process far more efficient.  For these reasons, Dexon was forced to serve a set of eight interrogatories on August 26, 2022 regarding Cisco's storage and search of its ESI.  Dexon believes that the interrogatory limit should thus be expanded to 35 per party, allowing for two more ESI-related interrogatories if necessary in addition to the customary 25 interrogatories that are traditionally used for purposes of the merits of the case.  Put another way, Dexon should not be penalized because it requires information about Cisco's storage and search of its ESI to be sure it is receiving relevant information relating to this case, and Dexon's proposal also permits Defendants to use up to 35 interrogatories.

Cisco's position makes clear that it intends to be rewarded for its efforts to stonewall relevant discovery and its requirements under the Local Rules.  Dexon's position has always been the same: Cisco should be undertaking all reasonable steps to discover how and by whom Dexon has been referenced in its files, either internally or externally.  Rather than doing so, Cisco has disclosed no source, method, or process by which it will identify relevant custodians or ESI.  Dexon's initial proposal for ESI-related interrogatories to be excluded from the 25 interrogatory limit for both parties was rejected by Cisco, so as a further attempt at agreement, Dexon proposed that all parties receive an additional 10 interrogatories to be used on any relevant matter.  Cisco's attempt this to frame this

9

as "Dexon's choice" is a further effort to reward itself for obstructionist conduct.   Cisco's further suggestion that Dexon will be using this discovery in Cisco's California litigation is baseless and inaccurate, as Dexon will only use the requested information to determine the relevant custodians and documents for this antitrust case, with issues entirely distinct from Cisco's alleged counterfeiting case.   Indeed, Cisco's responses to the interrogatories will not provide any information that is irrelevant to the antitrust case, and as Dexon stated in the Proposed Protective Order, the Northern District of California can determine what discovery is appropriate in its case.

<u>Defendants' Position:</u>

Dexon's interrogatory proposal – that the parties should get 35 interrogatories, not the standard 25 – is self-serving, the latest in a shifting approach, and inconsistent with the Federal Rules. *See* Fed. R. Civ. P. 33(a)(1).

Dexon's proposal appears intended to avoid the consequences of its own litigation choices: On August 26, 2022, Dexon issued 8 interrogatories to Cisco, ostensibly related to Cisco's electronic data storage, though some are much broader, e.g., "Identify the . . . contents of each of Cisco's database servers . . . ."  Having used nearly a third of its allowed interrogatories in its initial request to Cisco, Dexon proposed for the first time four days later that so-called ESI-related interrogatories should not count toward Rule 33's limit on interrogatories (i.e., Dexon gets *unlimited* such interrogatories).   When Defendants stated they would not consent to that unprincipled proposal, Dexon pivoted on August 31, 2022 – the day this submission is due – to proposing 35 interrogatories per party, clearly an effort to allow Dexon to recoup some of the interrogatories it has already used. There is no need for additional interrogatories.

Dexon attempts to foist blame for blowing 8 of its 25 interrogatories on Cisco, which informed Dexon during a meet and confer that Cisco does not have the technological capability to search the custodial files – including hard drives, email repositories, messages, shared drives, and

more – of more than 75,000 employees for the word "Dexon."  What Dexon seeks simply cannot be done.  If Dexon wants to pursue that issue further through interrogatories, that is its choice.  The Court should not, however, condone Dexon taking multiple bites at the apple by giving it additional interrogatories beyond what the Federal Rules provide.

Dexon's proposal highlights why the Court should adopt Defendants' proposed Docket Control Order:  Dexon itself expects voluminous discovery, so much so that it needs to increase the number of interrogatories the Federal Rules provide by 40 percent.  Dexon's conduct also shows why the Court should adopt Cisco's proposal (related to the Protective Order) to make discovery provided in this case available in the ongoing litigation in the Northern District of California.  *See* Dkt. 49 at 5-6.  Dexon can use the information it has sought here about Cisco's electronic data storage in the California litigation.  At the same time, however, Dexon demands that document discovery in the two cases remain separate, despite the undeniable common nexus of facts from which the two cases arise.  The Court should reject Dexon's self-serving and inconsistent positions:  discovery should be usable in both cases, and interrogatories should be limited in accordance with the Federal Rules.

m.**Settlement:**  There have been no settlement discussions between the parties and the parties are not presently engaged in settlement negotiations.  However, on October 18, 2022, Plaintiff Dexon Computer, Inc. and Defendant Cisco Systems, Inc. will participate in a mandatory settlement conference before Magistrate Judge Sallie Kim of the Northern District of California as to the earlier-filed case in which Cisco sued Dexon.  *See Cisco Sys., Inc. v. Dexon Computer, Inc.*, No. 3:20-cv-04926-CRB, Dkt. 136 (N.D. Cal.).

n. **Mediation:**  The parties have not agreed to meditation.  Should the parties agree to mediate, they will file a joint notice with the Court as detailed in the parties' proposed Docket Control Order.  However, as noted above, Plaintiff Dexon Computer, Inc. and Defendant Cisco

11

Systems, Inc. will participate in a mandatory settlement conference before Magistrate Judge Sallie Kim of the Northern District of California on October 18, 2022.

    o.  **Consent to Proceed Before Magistrate Judge:** The parties are unable to consent to proceed to trial before a United States Magistrate Judge at this time.

    p.  **Jury Demand:**

A jury demand was timely made in this action upon filing of the Original Complaint.

    q.  **Expected Trial Length:**

Plaintiff's Position:

Plaintiff believes that the expected length of trial is 10 days, with each side needing approximately 25 hours to present evidence and cross-examine witnesses at trial.  The case referenced by Defendants, *Travelpass*, involved eight defendants rather than two defendants.  Ten days for trial is more than sufficient in light of the number of parties in this case.

Defendants' Position:

This broad antitrust case – involving claims alleging monopolization of multiple markets, and tying allegations related to several consumer transactions – warrants 15 days of trial. Defendants anticipate calling multiple witnesses given the multiple relevant markets that Dexon alleges – covering at least three product markets, plus at least one more for services – and the many customer and distributor relationships at issue in the complaint.  In addition, Defendants anticipate both sides will need to call and examine multiple experts.  Given the breadth of the factual matters at issue in Dexon's complaint, 15 days of trial is reasonable and proportionate.  The Court provided for 20 trial days in its initial docket control order in a recent antitrust case assigned to Judge Schroeder.  *See TravelPass Grp. v. Caesars Entm't Corp.*, No. 5:18-cv-00153-RWS-CMC, Dkt. 115 (E.D. Tex. Apr. 17, 2019) at 4 (antitrust case; providing 20 days of trial); *see also Ferko v. NASCAR*, No. 4:02-cv-00050-RAS, Dkt. 85 (E.D. Tex. Jan. 8, 2003) at 3 (antitrust case; 20 trial

days in initial docket control order).

    r.  **Pending Motions:** The following motions are currently pending in this matter:

      1. Defendant Cisco's Motion to Transfer (Dkt. 21);
      2. Defendant Cisco's Motion to Dismiss for Failure to State a Claim (Dkt. 22);
      3. Defendant CDW's Notice Joining Cisco's Motion to Transfer Venue (Dkt. 27);
      4. Defendant CDW's Motion to Dismiss for Failure to State a Claim (Dkt. 28); and
      5. Defendant Cisco's Motion to Stay Discovery (Dkt. 36).
      6. Joint Motion for Entry of Disputed Protective Order (Dkt. 49).

    s.  **Other Matters:**

Disputes Regarding the Docket Control Order

Dexon's Position Regarding the Case Schedule and Trial Date

      Pursuant to the Court's Order of July 15, 2022 (Dkt. 33), Dexon has proposed a case schedule in the Docket Control Order that incorporates the Ordered May 23, 2023 Trial Date, May 9, 2023 Pre-Trial Conference Date, and Dispositive Motion Deadline of February 10, 2023.  Dexon believes this schedule is achievable, despite Defendants' objections, so long as Defendants' relevant documents and financial data are produced in a timely fashion, within six weeks of the Scheduling Conference.  In the interim, Dexon would further request that the Defendants be Ordered to produce their documents relating to Dexon ("Dexon documents"), agreements between Defendants, and Defendants' requested financial data by September 14, 2022.  At the time of this filing, CDW has represented that it will be making a production of its Cisco agreements and financial data on August 31, 2022.   Cisco has moved to stay discovery and thus has chosen not to substantively engage on discovery, and CDW has met with Dexon since June to discuss these document and data requests. We maintain that Defendants claims of burden on Dexon's proposed schedule are unsubstantiated and unjustified as Defendants have known since June 10, 2022 what discovery is necessary for this case, when Dexon sent letters to both Defendants detailing its positions.  Defendants do not propose any schedule that incorporates the Ordered Trial date, but rather only propose a schedule that

incorporates a Trial Date, Pre-Trial Conference Date and Dispositive Motion Deadline not authorized by the Court and with which Dexon does not consent.

In connection with the meet and confers Dexon has completed with CDW regarding discovery, Dexon considered stipulating to an amended Trial Date. In general, Dexon does not oppose an October 2023 Trial Date, but it could not agree to such because CDW would not provide a date by which it would produce its Dexon documents which CDW reports is approximately 88,000 documents that it had identified in June. Instead, CDW proposed that it produce Dexon documents only in conjunction with the rest of its relevant documents, but CDW would also not commit to a date by which it would produce all of its relevant documents. For all of these reasons, in addition to Cisco's disputed motion for a stay in discovery, Dexon believes that an extended schedule would be used by Defendants to further delay this case.

Should the Court nonetheless find the proposed October 2023 Trial Date appropriate, the most critical items that Dexon believes should be incorporated into the Docket Control Order are: (i) a date certain for Defendants' production of all requested financial data, no later than September 23, 2022, (ii) a date certain for Defendants' production of their Dexon documents[1] and agreements between Defendants, no later than September 30, 2022, and (iii) a date certain for Defendants' production of all of its relevant documents, no later than November 1, 2022. The number of party depositions in this case is likely to exceed twenty-five, and there will likely be a substantial number of third party depositions. Thus, any extra time built into the schedule should be used for tasks such as depositions that require such flexibility, as well as expert discovery that will be substantial. Document and data production from Defendants does not require such flexibility, and should be

---

[1] CDW's proposal to only produce Dexon documents in conjunction with the rest of its relevant documents eliminates all of the efficiencies associated with first identifying relevant custodians possessing Dexon documents, which would likely *limit* the subsequent discovery burden on CDW for Dexon's remaining requests.

completed expeditiously.

Defendants' position on the proposed DCO further illustrates why Cisco's motion to stay discovery should be denied.  Cisco knew the Court's Trial date on July 15, 2022 (Dkt. 33), and nonetheless moved to stay discovery on July 27, 2022 (Dkt. 36).  Also at the time of its motion to stay, Cisco had known about Dexon's data and document requests since June 10, 2022, and proceeded with its motion to stay even though CDW did not join the motion and Dexon requested that any motion to stay be filed in June.  Now, Cisco claims it needs an extended Trial Date and discovery schedule because Dexon's requests will require negotiation and "substantial document searching, review, examination for privilege, and ultimately production of materials."  These tasks and any negotiation could have and should have started in June, but Cisco instead moved to stay discovery with full knowledge of the circumstances.  Cisco's motion to stay should be denied, and discovery should proceed to meet the Court's schedule that Cisco has known about since July 15.

Defendants' Position:

The dates Defendants propose for the Docket Control Order – including setting trial for October 23, 2022, and the deadline for completing document productions (16 weeks before dispositive motions) – are reasonable and proportionate to the needs of this case.  *See*, *e.g., TravelPass Grp. v. Caesars Entm't Corp.*, No. 5:18-cv-00153-RWS-CMC, Dkt. 115 (E.D. Tex. Apr. 17, 2019) (initial trial date set 18 months after initial scheduling order); *OGD Equip. Co. v. Overhead Door Corp.*, No. 4:17-cv-00898-ALM-KPJ, Dkt. 65 (E.D. Tex. Oct. 23, 2018) (trial date set more than one year after initial scheduling order); *Ferko v. NASCAR*, No. 4:02-cv-00050-RAS, Dkt. 85 (E.D. Tex. Jan. 8, 2003) (initial trial date to be set more than one year after scheduling conference).  Dexon alleges multiple product markets and a service market, global and U.S. geographic markets, and multiple theories of supposed anticompetitive conduct – all alleged to have extended over nearly a decade.  Accordingly, the parties require substantial time for fact and

15

expert discovery.  Indeed, Dexon itself says that it "does not oppose an October 2023 Trial Date." It is disputing only discovery timelines in the interim – merely speculating, without any proof, that Defendants might delay, while ignoring the massive scope of the discovery Dexon itself demands and the impossible deadlines by which it demands it.

Dexon's initial discovery demands are illustrative.  It seeks (per letters Dexon sent to Cisco and CDW) dozens of document categories, spanning more than 10 years, and for broad topics including, "All documents regarding Cisco's competitors in the Relevant Markets."  Even a reasonable narrowing of Dexon's demands will require substantial document searching, review, examination for privilege, and ultimately production of materials relevant to Dexon's multi-market, multi-conduct, multi-year allegations.  Further, in response to Cisco and CDW's separate initial requests to Dexon for discovery, Dexon's counsel has already stated that Dexon was unwilling to provide information on counterfeit or otherwise non-genuine Cisco equipment that Dexon has sold (or tried to sell) to customers, a key issue for Defendants to rebut Dexon's allegations in the complaint.  This will likely necessitate motion practice, demonstrating just one of many contentious issues likely to arise in fact discovery.  Following that fact discovery, the parties will require meaningful time for expert discovery.

The order that Dexon improperly seeks within this joint submission – that Defendants produce all "documents relating to Dexon" within one week of the scheduling conference, without any briefing on such a *de facto* motion to compel – is equally unreasonable.  To start, the request is overbroad:  Dexon is entitled to documents relating to claims and defenses at issue, not all "documents relating to Dexon."  And though the parties have requested Dexon narrow this request, Dexon has refused to do so.  In addition, as noted above, the demand is technologically infeasible for Cisco, which notified Dexon that it cannot search more than 75,000 custodians' files for the word "Dexon," let alone collect, review, and produce those documents in one week.  As Cisco

16

informed Dexon during meet and confers, Cisco is conducting a good faith and reasonable investigation and will produce the documents to which Dexon is entitled if discovery is not stayed.

Dexon's demand for a series of deadlines for rolling productions – first financial data, then all documents "relating to Dexon," then all other documents – is also unnecessary micromanagement.  As Defendants explain above, completing discovery in this case will require more time than Plaintiff proposes.  And as CDW has explained to Dexon in their meet-and-confers, it is extremely inefficient and costly to conduct multiple phases of document review; such an undertaking – particularly of the size Dexon seeks in this matter – should be done with one agreed-to set of custodians and a single review protocol, to minimize the need for additional document discovery.  And CDW has already begun producing to Dexon data and other documents it could identify before engaging in a forensic document collection.  But in all events – no matter the trial date – document and data productions should be due by a particular date, full stop, without staggering arbitrarily selected categories of documents and data with interim deadlines.  Defendants' proposal that the deadline fall 16 weeks before dispositive motions allows sufficient time for all parties to manage document discovery efficiently and leaves ample time for the "substantial number" of depositions that Dexon anticipates.

Dated:  August 31, 2022

Respectfully submitted,

By:  */s/ David H. Reichenberg w/ permission*
*William E. Davis, III*
William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com
**The Davis Firm PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Phone: (903) 230-9090
Facsimile: (903) 230-9661

David H. Reichenberg (*pro hac vice*)
**Manatt, Phelps, & Phillips LLP**

17

7 Times Square
New York, NY 10036
dreichenberg@manatt.com
Phone:  (212) 790-4626

**ATTORNEYS FOR PLAINTIFF
DEXON COMPUTER, INC.**


By:  */s/ Deron R. Dacus*
DERON R. DACUS (Bar No. 00790553)
THE DACUS FIRM, PC
821 ESE Loop 323, Suite 430
Tyler, TX 75701
(903) 705-1177
ddacus@dacusfirm.com


AARON M. PANNER (*pro hac vice*)
ANDREW E. GOLDSMITH (*pro hac vice*)
ALEX A. PARKINSON (*pro hac vice*)
KYLIE C. KIM (*pro hac vice*)
RYAN M. FOLIO (*pro hac vice*)
CAROLINE A. SCHECHINGER (*pro hac vice*)
D. CHANSLOR GALLENSTEIN (*pro hac vice*)
KELLOGG, HANSEN, TODD,
   FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
apanner@kellogghansen.com
agoldsmith@kellogghansen.com
aparkinson@kellogghansen.com
kkim@kellogghansen.com
rfolio@kellogghansen.com
cschechinger@kellogghansen.com
cgallenstein@kellogghansen.com


RICHARD J. NELSON (*pro hac vice*)
LOUIS P. FEUCHTBAUM (*pro hac vice*)
SIDEMAN & BANCROFT LLP
One Embarcadero Center
Twenty-Second Floor
San Francisco, CA 94111-3711
(415) 392-1960
rnelson@sideman.com
lfeuchtbaum@sideman.com

18

**ATTORNEYS FOR DEFENDANT CISCO SYSTEMS, INC.**

/s/ *James A. Reeder, Jr. w/permission*

Jennifer H. Doan
Texas Bar No. 08809050
Cole A. Riddell
Texas Bar No. 24105423
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile:  (903) 255-0800
Email:  jdoan@haltomdoan.com
Email:  criddell@haltomdoan.com

James A. Reeder, Jr.
Texas Bar No. 16695010
JONES DAY
717 Texas, Suite 3300
Houston, Texas 77002
Telephone:  (832) 239-3939
Fax:  (832) 239-3600
Email:  jareeder@jonesday.com

Thomas D. York
Texas Bar No. 24095531
JONES DAY
2727 N. Harwood Street
Dallas, TX 75201
Telephone:  (214) 969-4523
Fax:  (214) 969-5100
Email:  tdyork@jonesday.com

**ATTORNEYS FOR DEFENDANT CDW CORPORATION**