IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| **DEXON COMPUTER, INC.,**<br><br>    *Plaintiff*,<br><br>v.<br><br>**CISCO SYSTEMS, INC. and CDW CORPORATION,**<br><br>    *Defendants*. | **CASE NO: 5:22-CV-00053-RWS-JBB**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF DEXON COMPUTER INC.'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SPOLIATION SANCTIONS AGAINST CISCO SYSTEMS, INC.**

## I.  INTRODUCTION

There is no dispute that Cisco knowingly ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ The data that has been irretrievably destroyed involved millions of internal chat communications on a platform that Cisco employees used regularly. These chats facilitated an ability for Cisco employees to speak quickly and candidly, including about Dexon, which speaks to their relevance and significance in this case. The Federal Rules do not, and cannot, permit parties like Cisco to ignore their preservation obligations. Cisco's attempt to justify its conduct only confirms the harm it has caused.

*First*, Cisco's argument that it was not under a duty to preserve evidence defies the law and common sense. Cisco destroyed all contents of an entire communications platform ***while already in active litigation with Dexon*** and made no effort to preserve the data, despite placing several custodians on hold prior to its suit.

*Second*, the facts illustrate Cisco's bad faith. Cisco destroyed documents at a time when it was already in litigation and seven of its seventeen eventual ESI custodians were already placed on litigation holds. In an attempt to cover its wrongdoing, Cisco relies upon the sworn declaration of Kieran Higgins, who declares that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Dkt. No. 164-2, at ¶ 4.) This conflicts with Mr. Tennis' testimony that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Even assuming Higgins' declaration is correct, it provides no explanation or justification for Cisco's failure to take the appropriate steps to preserve this data, which Cisco undisputedly could have but chose not to do so.

*Finally*, Cisco attempts to undermine Dexon's prejudice by falsely claiming ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Seven of Cisco's ESI custodians were placed on hold ▮▮▮▮▮▮▮▮. Had Cisco preserved its Jabber data, then there would be data dating back to the

1

date that each hold was issued. Cisco also argues that the emails produced suffice for Dexon to prove its case. But it is the unique aspect of Jabber chats—where employees can speak quickly and candidly—that renders their value irreplaceable. For these reasons and the reasons set forth in Dexon's opening brief, it is respectfully submitted that the Court should issue spoliation sanctions.

## II.  ARGUMENT

### A.  Cisco's Duty to Preserve Began When It Foresaw Litigation With Dexon

Cisco's own privilege log confirms that it anticipated litigation against Dexon well before filing suit July 2020. Below are just a few of the many examples of Dexon-related documents withheld on grounds of attorney-client privilege and work product:



Cisco's duty to preserve attached at the time of expected litigation. *Sanofi-Aventis Deutschland GmbH v. Glenmark Pharm. Inc.*, 748 F.3d 1354, 1362 (Fed. Cir. 2014) (finding litigation reasonably foreseeable no later than date the defendant asserted work product on its privilege log); *Integrated Comm'ns & Techs., Inc. v. Hewlett-Packard Fin. Servs. Co.*, 2020 WL 4698535, at *4 (D. Mass. Aug. 13, 2020) (same).

In any event, Cisco's duty to preserve attached, at the very latest, when it brought suit against Dexon in the Northern District of California on July 22, 2020. Courts have held that prior litigation involving the same parties can provide sufficient notice to trigger a party's duty to preserve. *See Resnik v. Coulson*, 2019 WL 1434051, at *8 (E.D.N.Y. Mar. 30, 2019) (duty to preserve triggered based upon defendant's involvement in prior litigation with the plaintiff); *Mule v. 3-D Building Const. Mgmt. Corp.*, 2021 WL 2788432, at *8 (E.D.N.Y. July 2, 2021) (duty to preserve began when the plaintiff commenced a prior arbitration against the defendant); *Montoya v. Orange Cnty. Sheriff's Dept.*, 2013 WL 6705992, at *8 (C.D. Cal. Dec. 18, 2013) (similar). The same holds true here.

The two cases relied upon by Cisco on this score are off-point.[1] In *True the Vote, Inc. v. IRS*, the Court rejected the plaintiff's "creative" attempt to establish a duty to preserve by piggy-backing off a separate litigation that did not involve the same parties. 2014 WL 4347197, at *4 (D.D.C. Aug. 7, 2014). In *Oracle Am., Inc. v. Hewlett Packard Enters. Co.*, the court held that a duty to preserve did not date back to the parties' prior litigation five years earlier, but that the duty to preserve *did* exist based upon the plaintiff's involvement in a more recent lawsuit with the defendant in which the action at issue was foreseeable. 328 F.R.D. 543, 551-52 (N.D. Cal. 2018). Likewise here, Cisco knew that all of its internal correspondence about a small company it planned to sue could bear upon Dexon's potential defenses and affirmative claims against Cisco.

**B.** **Cisco's Spoliation of Jabber and WebEx Data Was Done in Bad Faith**

The fundamental element of "bad faith is 'is advantage-seeking behavior by the party with superior access to information necessary for the proper administration of justice.'" *Quantlab*

---

[1] Neither *Guzman v. Jones*, 804 F.3d 707(5th Cir. 2015) nor *Hernandez v. Rush Enters., Inc.*, 2020 WL 7041822 (E.D. Tex. Dec. 1, 2020)—the other two cases cited by Cisco (Dkt. No. 164 at 7)—discussed a duty to preserve based upon prior litigation.

3

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇   ▇▇▇▇▇▇▇▇▇▇▇▇▇

*Techs. Ltd. (BGI) v. Godlevsky*, 2014 WL 651944, at *10 (S.D. Tex. Feb. 19, 2014) (citation omitted). The record here supports a finding of bad faith: (i) Cisco is a multi-billion dollar company ***that owns the very communication platform it destroyed***; (ii) Cisco is no stranger to litigation and is aware of its preservation obligations; and (iii) Cisco ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ notwithstanding its pending litigation against Dexon and that several ESI custodians were already placed on litigation holds. Cisco does not, because it cannot, attempt to meaningfully address these points.

Cisco's bad faith is further demonstrated by its efforts to downplay the significance of its ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ For instance, Cisco now, for the first time, claims that Jabber was an ▇▇▇▇▇▇▇▇▇▇▇▇▇" platform whose ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Dkt. No. 164, at 9). This argument is not a viable excuse, where, as here, Cisco knew it had the ability to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 979 (N.D. Ill. 2021). Further, Cisco's contention that this issue only concerns "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Dkt No. 164, at 7-9, 14), grossly mischaracterizes the extent of its document destruction and ignores the ESI custodians that were placed on holds ***prior*** to July 2020. In addition, as detailed in Dexon's opening brief and unaddressed by Cisco, upon discovery of this preservation problem, Cisco did not cooperatively work with Dexon to provide basic information about the scope of preservation destruction. Instead, Cisco denied any problem at all. Cisco's behavior exhibits the hallmarks of bad faith.

### C. Cisco's Spoliation Has Prejudiced Dexon

The prejudice to Dexon due to Cisco's failure to preserve ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ is substantial. This dispute does not center around the preservation of four months' worth of data; it

4

concerns Cisco's failure to comply with its own litigation holds, which would have preserved hundreds of millions of chats. For example, had Cisco complied with its own litigation holds for ESI custodians ▮▮▮▮ and ▮▮▮▮ scores of chat data would have been discoverable. And, as Dexon's opening brief showed, ▮▮▮▮ (Dkt No. 150, at 1-2.) Based upon the few WebEx chats preserved, it is apparent that Cisco employees used these chat platforms to have candid conversations, including conversations involving Dexon. The prejudice to Dexon is obvious—depriving Dexon of a key source of data that could establish Cisco's anticompetitive motives and actions. *See Quantlab Techs.*, 2014 WL 651944, at *10.

In response, Cisco asserts that there is no prejudice since Dexon received emails to prove its case. (Dkt. No. 164, at 14.) Nowhere does Cisco explain how its emails provide equivalent information in place of the destroyed chats. Nor could it, since the contents of these chats have been destroyed for more than two years. The two cases cited by Cisco are inapposite. *Peals v. QuikTrip Corporation* involved a "relatively straightforward slip-and-fall case" for which the plaintiff was not relying on text evidence. 2021 WL 2043185, at *8 (E.D. Tex. May 21, 2021). And, in *In re Enron Corp. Securities, Derivative & ERISA Litigation*, the court held that the plaintiffs failed to adequately plead a claim for spoliation, arising from Enron's well-documented destruction of documents, despite the "substantial sources of information available to Plaintiffs to draw on." 762 F. Supp. 2d 942, 1019-20 (S.D. Tex. 2010). Simply put, Cisco's prejudice argument presents nothing more than conjecture and should be rejected.

### III. CONCLUSION

For these reasons, and the reasons set forth in Dexon's opening brief (Dkt. No. 150), Dexon respectfully requests that its motion for spoliation sanctions be granted.

Dated: April 21, 2023

Respectfully submitted,

By: /s/ *David H. Reichenberg w/ permission*
*William E. Davis, III*
William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com
**The Davis Firm PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Phone: (903) 230-9090
Facsimile: (903) 230-9661

David H. Reichenberg (*pro hac vice*)
Matthew F. Bruno (*pro hac vice*)
Tina P. Lapsia (*pro hac vice*)
**Manatt, Phelps, & Phillips LLP**
7 Times Square
New York, NY 10036
dreichenberg@manatt.com
mbruno@manatt.com
tlapsia@manatt.com
Phone: (212) 790-4626
Facsimile: (212) 790-4500

**ATTORNEYS FOR PLAINTIFF
DEXON COMPUTER, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served on April 21, 2023, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission, and/or first-class mail on this same date.

/s/ *David H. Reichenberg*
David H. Reichenberg

