### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### TEXARKANA DIVISION

| | | |
|---|---|---|
| **DEXON COMPUTER, INC.** | § | |
| | § | |
| **v.** | § | **Case No. 5:22-cv-53-RWS-JBB** |
| | § | |
| **CISCO SYSTEMS, INC. and CDW** | § | |
| **CORPORATION** | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

The above-referenced cause of action was referred to the undersigned United States Magistrate Judge for pretrial purposes in accordance with 28 U.S.C. § 636. The following motions are pending before the Court:

> **Dexon Computer, Inc.'s Motion to Strike Cisco's Affirmative Defenses Pled in its Answer to Dexon's Amended Complaint (Dkt. No. 234); and**

> **Dexon Computer, Inc.'s Motion for Leave to File a Supplemental Brief in Support of its Motion to Strike Cisco's Affirmative Defenses (Dkt. No. 410).**

Dexon's motion for leave to file a supplemental brief is **GRANTED**.[1] The Court, having carefully considered the relevant briefing, recommends Dexon's motion to strike be **DENIED** as to Cisco's Fourth, Eleventh, and Twelfth Affirmative Defenses and any purported "unpled" affirmative defense of counterfeiting and **DENIED WITHOUT PREJUDICE** as to the remaining affirmative defenses at issue in Dexon's motion.

---

[1] The Court agrees with Cisco's expedited response that many of the issues raised in Dexon's supplemental brief (*e.g.*, regarding Defendants' exhibit and trial witness lists) are better resolved at the pretrial conference and would not necessarily justify leave to supplement the completed briefing on Dexon's motion to strike. However, considering the second supplement contains additional arguments beyond evidentiary issues, the Court grants Dexon's motion for leave. However, the Court cautions the parties to refrain from filing unsanctioned supplemental filings in the future without first seeking leave of Court to do so. *See*, *e.g.*, Dkt. Nos. 441 (Dexon's reply in further support of its motion for leave), 442 (Cisco's surreply).

# I. BACKGROUND

On April 27, 2022, Plaintiff Dexon Computer, Inc. ("Dexon") filed the above antitrust case against Defendants Cisco Systems, Inc. ("Cisco") and CDW Corporation ("CDW") (collectively, "Defendants").[2] Among other things, Dexon alleges that Cisco, "[t]hrough its improper conduct, by its business practices," has coerced customers not to purchase from certain resellers by successfully employing a strategy of "fear, uncertainty and doubt," or "FUD," wrongly claiming to customers that unfavored resellers sell "bootleg," "unauthorized," or goods with "malware" or "spyware" to dissuade purchases from these resellers. *See* Am. Compl. (Dkt. No. 175), ¶ 6. Dexon alleges Cisco does not have a "legitimate business purpose for its anticompetitive conduct." *Id.*, ¶ 112.

On May 12, 2023, Cisco filed its answer to the amended complaint. Dkt. No. 191. In its answer, Cisco raises the following nine affirmative defenses relevant to the instant motion:

- Fourth (Dexon's claim that Cisco's conduct was exclusionary fails because there are procompetitive justifications and legitimate business justifications for the alleged conduct);

- Fifth (Dexon's claims fail because Cisco's conduct did not harm competition and consumers);

- Sixth (Dexon is not entitled to relief because it has not sustained any antitrust injury proximately caused by Cisco);

- Seventh (The doctrine of laches bars Dexon's claims for injunctive or other equitable relief);

- Eighth (The doctrine of unclean hands bars Dexon's claims for injunctive or other equitable relief);

---

[2] By way of background, on July 22, 2020, almost two years before Dexon filed its current case, Cisco filed suit against Dexon in the U.S. District Court for the Northern District of California ("California Lawsuit"), alleging among other things that Dexon sells counterfeit Cisco products in violation of the Lanham Act and California state law. *See* Dkt. Nos. 94, 107, 149.

- Ninth (Dexon's claims fail because the alleged conduct was not the proximate cause of its asserted damages);

- Tenth (Dexon is entitled to no damages by reason of its failure to mitigate, minimize, or avoid the damages alleged);

- Eleventh (res judicata or claim preclusion); and

- Twelfth (collateral estoppel or issue preclusion)

*Id.* at 41.

On June 2, 2023, Dexon filed its current motion seeking to strike each of the above affirmative defenses under Federal Rule of Civil Procedure 12(f) because they fail to satisfy the pleading requirements (Cisco's business justification, laches, unclean hands, mitigation, res judicata, and collateral estoppel defenses) or are denials of an element of Dexon's *prima facie* case (Fifth, Sixth, and Ninth affirmative defenses). Dkt. No. 234 at 1-7. Additionally, Dexon asserts Cisco has waived its unpled purported counterfeiting affirmative defense, and Cisco should not be granted leave to amend to replead any counterfeiting defense. *Id*. at 8-12.

In its response, Cisco first asserts Dexon did not meaningfully meet and confer in good faith before filing this motion as required by Local Rule CV-7(h), thus warranting denial of Dexon's motion. Substantively, Cisco states it has adequately pleaded its affirmative defenses. Concerning its Fourth Affirmative Defense of legitimate business justifications, which is the focus of Dexon's motion, Cisco asserts Dexon cannot credibly claim any risk of prejudice or unfair surprise that this defense includes evidence of purported counterfeit sales because Cisco has made it clear from the outset of this case that, as part of its defense, Cisco will attempt to "show that its communications with prospective Dexon customers, as well as its distribution policies, protect consumers and Cisco's reputation by ensuring that Cisco-branded products sold to end users are

genuine and of high quality." Dkt. No. 244 at 1 (noting the sale of counterfeit products harms customers and undermines Cisco's brand), 6-7.

Regarding its Seventh, Eighth, and Tenth Affirmative Defenses, Cisco asserts its pleading is sufficient to put Dexon on notice as to nature of its laches, unclean hands, and mitigation defenses. *Id.* at 10-11. With respect to its Eleventh and Twelfth Affirmative Defenses (res judicata and collateral estoppel), Cisco asserts the parties have already litigated the issue of whether the litigation in California has preclusive effect in this litigation, and Dexon does not explain what additional facts Cisco should have pleaded. *Id.* at 11. Regarding its Fifth, Sixth, and Ninth Affirmative Defenses, although Cisco takes no issue with the premise that Dexon bears the burden to prove harm to competition, antitrust injury, and proximate cause, Cisco states the remedy Dexon seeks – striking these defenses – is unnecessary. *Id.* at 12. Cisco further asserts that had Dexon engaged in a proper meet-and-confer as to these defenses, "motion practice might have been unnecessary on this issue because the parties could have stipulated that Dexon bears the burden." *Id.*

After briefing was completed, Dexon filed two supplemental briefs limited to the issue of counterfeiting / Cisco's Fourth Affirmative Defense. *See* Dkt. Nos. 260, 411. Cisco has filed responses to both supplemental briefs. *See* Dkt. Nos. 263, 427.

## II. LEGAL STANDARD

"Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules . . . upon the court's own initiative at any time, the court ***may*** order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Godo Kaisha IP Bridge 1 v. Telefonaktiebolaget LM Ericsson*, No. 2:21-CV-00213-JRG, 2022 WL 2055232, at *1 (E.D. Tex. June 6, 2022) (quoting FED. R. CIV.

P. 12(f) (emphasis added in *Godo Kaisha*)). This rule creates a clear mechanism for the court to save time and expense by eliminating insufficient defenses from the pleadings when those items lack merit or are otherwise unavailing. *Id.* (citing *Operating Eng'rs Local 324 Health Care Plan v. G&W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) ("The function of the motion is to avoid the expenditure of time and money that must arise from litigating spurious issues")). "Although motions to strike a defense are generally disfavored, a Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law." *Id.* (quoting *Kaiser Aluminum v. Chem. Sales, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982)). To find that a defense is insufficient as a matter of law, the court considers whether the defense is applicable to the case and whether the pleadings give plaintiff fair notice of the defense. *Id.* (citing *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999)).

Moreover, the court may strike purported affirmative defenses as "redundant" or "immaterial" under Rule 12(f) on the ground that they are not affirmative defenses at all, but mere denials of an element of the plaintiff's *prima facie* case. *Id.* at *2 (citing *F.T.C. v. Think All Pub. L.L.C.*, 564 F. Supp. 2d 663, 665–66 (E.D. Tex. 2008)). However, while the court may strike such defenses, "striking portions of pleadings is a 'drastic remedy' and is 'often sought by a movant simply as a dilatory tactic.'" *Id.* (quoting *Motorola Mobility, Inc. v. TiVo Inc.*, No. 5:11-cv-053-JRG, 2013 WL 12040725, at *2 (E.D. Tex. Jan. 25, 2013) (quoting *Am. Southern Ins. Co. v. Buckley*, 748 F. Supp. 2d 610, 626 (E.D. Tex. 2010))). "[T]he action of striking a pleading should be sparingly used by the courts" and "motion[s] to strike should be granted only when the pleading to be stricken has no possible relation to the controversy." *Id.* (quoting *United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012)).

Generally a defendant must raise any affirmative defense in their answer. *Linder v. Assured Enterprises, Inc*., No. H-20-1363, 2021 WL 5161738, at *6 (S.D. Tex. June 8, 2021) (citing FED. R. CIV. P. 8(c)). Defenses not raised in response to a pleading may be waived. *Id.* (citing *Smith v. Travelers Cas. Ins. Co. of Am*., 932 F.3d 302, 308–09 (5th Cir. 2019)). "Where the matter is raised in the trial court in a manner that does not result in unfair surprise, however, technical failure to comply precisely with Rule 8(c) is not fatal." *Smith*, 932 F.3d at 309. An affirmative defense is thus not waived if the defense "is raised 'at a pragmatically sufficient time,' and if the plaintiff 'was not prejudiced in its ability to respond.'" *Id*. (quoting *Lucas v. United States*, 807 F.2d 414, 418 (5th Cir. 1986)); *see also Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009) ("[U]nder Rule 8(c) we do not take a formalistic approach to determine whether an affirmative defense was waived. Rather, we look at the overall context of the litigation and have found no waiver where no evidence of prejudice exists and sufficient time to respond to the defense remains before trial."). A plaintiff is not prejudiced if they had sufficient notice to prepare for and contest the defense. *Smith*, 932 F.3d at 309.

## III. DISCUSSION

### A.    Cisco's Fourth Affirmative Defense and counterfeit-related issues

Though Dexon moves to strike nine of Cisco's affirmative defenses, the near-exclusive focus of Dexon's motion to strike and two rounds of supplemental briefing is whether Cisco has waived a purportedly "unpled" and "invalid" affirmative defense of counterfeiting, and relatedly, whether Cisco should be allowed to rely on any evidence of purported counterfeiting in the absence of a valid counterfeiting affirmative defense. Cisco contends its alleged actions were (at least in part) to reduce the effects of counterfeiting, and therefore, to the extent counterfeiting needed to be pled, it is part of its "business justification" identified in Cisco's Fourth Affirmative Defense.

Dkt. No. 244 at 7 n.5; Dkt. No. 255 at 2. That defense states, in its entirety, that "Dexon's claim that Cisco's conduct was exclusionary fails because there are procompetitive justifications and legitimate business justifications for the alleged conduct." Dkt. No. 191 at 41. The thrust of Dexon's motion is to remove the counterfeiting issue from the case by arguing counterfeiting (1) was not pled with enough specificity, (2) was waived, and/or (3) cannot be used as a procompetitive justification for anticompetitive behavior as a matter of law for the reasons expressed in *Arista Networks, Inc. v. Cisco Sys., Inc.*, No. 16-CV-00923-BLF, 2018 WL 11606358, at *1 (N.D. Cal. Feb. 14, 2018) ("*Arista*").

The Court previously denied Dexon's request to preclude discovery on counterfeiting, allowing that issue to be explored in discovery and stated that the Court would consider the proper use of any counterfeiting evidence at pretrial. Dkt. No. 218 at 1-2. For the reasons explained below, nothing in Dexon's briefings supports changing course from that plan: (1) Dexon had fair notice that Cisco would claim its actions were justified in light of counterfeit "Cisco" equipment in the marketplace (and certain aspects of the counterfeiting issue need not be pled because they directly answer Dexon's claim that Cisco "falsely" told customers that Dexon sells "bootleg" equipment); (2) Cisco's pursuit of, and alleged discovery violations concerning, specific pieces of counterfeiting evidence do not support a wholesale finding of waiver; and (3) Dexon fails to show actions allegedly taken to reduce counterfeiting cannot, as a matter of law, be raised as a procompetitive justification in this antitrust suit.[3]

---

[3] Regarding Dexon's underlying request to exclude counterfeiting evidence, the details of what is in or out will be addressed at pretrial, where objected to evidence and the pending motion *in limine* on counterfeiting will be evaluated under the applicable legal standards, including the balancing test proscribed in Federal Rule of Evidence 403. There is no reason to go further now because the counterfeiting issue is too nuanced for broad rulings: evidence of *general* issues concerning counterfeiting may go to Cisco's purported business justifications for its alleged actions concerning how it manages its distribution network and evidence of *specific* instances of Dexon's alleged sale of counterfeit goods may go to Dexon's claim that Cisco falsely told customers that Dexon sells counterfeit products.

***Background Regarding Dexon's Notice of Cisco's Likely Reliance on Counterfeiting***

The issue of whether Cisco's Fourth Affirmative Defense was sufficiently pled to include counterfeiting turns on notice. That is, an affirmative defense must be pled with "enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced." *DirecTV, L.L.C. v. WNK Assocs., Inc.*, No. 6:22-CV-00423-JDK, 2023 WL 3612351, at *2 (E.D. Tex. May 4, 2023), *report and recommendation adopted*, No. 6:22-CV-423-JDK, 2023 WL 3605969 (E.D. Tex. May 23, 2023) (quoting *Woodfield*, 193 F.3d at 362).[4] Under *Woodfield*, the "fair notice" pleading requirement is met if the defendant "sufficiently articulated the defense so that the plaintiff was not a victim of unfair surprise." *Woodfield*, 193 F.3d at 362. In some cases, "merely pleading the name of the affirmative defense . . . may be sufficient." *Id.* A court employs a fact-specific analysis in deciding whether the plaintiff was unfairly surprised. *Id.* Critically, "[w]here the matter is raised in the trial court in a manner that does not result in unfair surprise . . . . technical failure to comply precisely with Rule 8(c) is not fatal." *Smith v. Travelers Cas. Ins. Co. of Am.*, 932 F.3d 302, 309 (5th Cir. 2019).

While the Fourth Affirmative Defense does not include the term "counterfeit" (or similar), Dexon was on notice Cisco would likely raise the issue of counterfeiting. Throughout this lawsuit, Cisco has made it clear that it would assert its actions were pro-competitive because, in part, they are in response to Dexon's alleged trafficking of counterfeit Cisco products. *See* Joint Motion for Entry of Stipulated Discovery Order and Disputed Protected Order and ESI Order (Dkt. No. 58) at 8-9 (stating "Cisco intends to prove here that Dexon has trafficked in counterfeit Cisco products,

---

[4] It is unclear whether the plausibility standard for pleading, expressed in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), extends to the pleading of affirmative defenses. *Pem-Air Turbine Engine Servs. L.L.C. v. Gupta*, No. 3:21-CV-00180-L, 2022 WL 2835840, at *4 (N.D. Tex. July 19, 2022) (noting the Fifth Circuit has not addressed this issue). In the absence of guidance from the Fifth Circuit and Supreme Court, the court in *Gupta* applied the standard from *Woodfield*. *Id.* (citing cases). Similarly here, the Court will apply the standard from *Woodfield*.

and that, even if the Court were to credit the allegations in Dexon's complaint, Cisco had legitimate and procompetitive reasons for the actions Dexon alleges" and further stating "Dexon's conduct at issue in the California case would be relevant here (and vice versa) even if Cisco never pleads an affirmative defense alleging Dexon's trafficking of counterfeit products" because "Dexon *itself alleges* as part of its affirmative counts that Cisco had no legitimate business reason for supposedly targeting Dexon"); *see also* Cisco's motion to transfer (Dkt. No. 12) at 13 ("Should Cisco's motion to transfer be denied, Cisco may assert as affirmative defenses before this Court that the conduct Dexon alleges to be in violation of federal and Texas antitrust law protects consumers from counterfeit and unlicensed products, like those that Dexon allegedly distributes."); Cisco's reply in support of its motion to transfer (Dkt. No. 31) at 3, n. 2 ("If the complaint is not transferred, Cisco could raise Dexon's distribution of counterfeit and unlicensed Cisco products as defenses before this Court, just as Dexon's repeated counterfeiting is at the heart of the Lanham Act claims Cisco brought against Dexon in the California Lawsuit."); Cisco's response to Dexon's motion to compel (Dkt. No. 90) at 3 (Cisco confirmed that it was "collecting and expects to produce documents . . . related to the risks of counterfeit products, Cisco's policies regarding unauthorized sales, . . ."); Cisco's sealed motion to compel damages disclosures (Dkt. No. 141) at 1 ("Dexon sells counterfeit and unauthorized Cisco products. It claims that, if Cisco had not acted to protect end users from the risks that Dexon's sales of counterfeit and unauthorized Cisco products create for them, then Dexon would have made more money, selling more counterfeit and unauthorized Cisco products."); Cisco's sealed motion to compel ESI custodians (Dkt. No. 145) at 6, n. 2 ("The jury may also consider 'procompetitive benefits or justifications' for any challenged conduct. . . . [REDACTED NAMES] possess information relevant not only to Dexon's claims about Cisco's

business practices – which prevent the sale of counterfeit – but also to why Cisco uses those practices. And Dexon expressly chose to put Cisco's business practices at issue. . . .")).

Through May of 2023, there was discovery into the issue of counterfeiting without objection from Dexon. For example, on January 11, 2023, Dexon moved to compel Cisco to add two ESI custodians and disclose witnesses who had been involved in "hundreds of communications that relate to Dexon, including products allegedly sold by Dexon to end user customers." Dkt. No. 97 at 3; *see also* Dkt. No. 111 (February 8, 2023 Order granting, as modified, Dexon's motion). Cisco asserts the responsibilities of these witnesses "involve evaluating whether purported 'Cisco' products are genuine or counterfeit, including counterfeit equipment sold by Dexon." Dkt. No. 244 at 9 (further stating Dexon has deposed four additional Cisco employees who are responsible for brand protection – "that is, investigating sales of unauthorized and counterfeit equipment").

Things changed after the filing of Cisco's May 12, 2023 answer. Dexon claims it was "shock[ed]" in mid-May 2023 when Cisco alerted Dexon for the first time since the filing of its answer that it reserved the right to call one of these witnesses, Mr. Ho, as a witness at trial.  Dkt. No. 234 at 5, 9. In an email dated May 17, 2023, counsel for Dexon stated he saw no basis for Mr. Ho to testify at trial because "Cisco has not pled, and thus has waived, any purported affirmative defense based on counterfeit." Dkt. No. 206-1 at 6. Counsel further requested that Cisco confirm that it would not ask Dexon witnesses any questions about purported counterfeit claims. *Id*.

The next day, counsel for Cisco confirmed via email that Cisco did intend to ask Dexon witnesses about "Dexon's apparent trafficking in counterfeit Cisco products, and [that] it reserves the right to call Mr. Ho to testify at trial about hardware authentication procedures, including at least one test of Dexon-sold hardware, as noted in its initial disclosures." *Id*. at 5. Counsel pointed

out that Cisco had "long expressly said it would make" counterfeit-related arguments; "Dexon's trafficking in counterfeit Cisco products is relevant to the elements of Dexon's claims, not only to affirmative defenses that must be pleaded by Cisco;" "if Cisco were required to preserve in its Answer its intent to argue procompetitive justifications and legitimate business justifications for its conduct, it did so, in its fourth affirmative defense;" and "in any event, there [was] no basis to preclude deposition questioning on the basis of relevance." *Id.*  Counsel further emphasized that Dexon has known Cisco's position since at least Cisco's July 2, 2022 letter explaining that it would seek discovery on these issues. *Id.*; *see also* Dkt. No. 104-1 (October 2022 email during a dispute over the search terms for the ESI search wherein counsel for Dexon states: "We maintain that Dexon does not engage in counterfeiting. That said, we understand that Cisco plans to make that allegation, and thus we will not withhold documents that are relevant to Cisco's planned allegation. As stated before, Dexon is reserving its right to maintain that any affirmative defense based on alleged IP infringement or counterfeiting is invalid as a matter of law.").

Reaching an impasse on the issue, Cisco filed an emergency motion (Dkt. No. 206), and Dexon filed a motion for protective order (Dkt. No. 215) regarding Cisco's proposal to question Dexon witnesses about purported counterfeiting.[5] The undersigned held a hearing on May 24, 2023 and issued rulings from the bench and issued a corresponding Order the following day. Specifically, the undersigned did not limit Defendants' questions as relevant to whether Cisco has a legitimate business purpose for its alleged anticompetitive conduct.  Dkt. No. 218 at 1. Although Cisco was not precluded from questioning about alleged "counterfeit" products, the Court noted

---

[5] In Cisco's motion, Cisco requested the Court order Dexon to present its witnesses for previously scheduled depositions and to bar Dexon from instructing its witnesses not to answer questions regarding Dexon's sales of counterfeit "Cisco" equipment. Dkt. No. 206 at 1. In Dexon's motion, Dexon requested the Court bar Cisco from "invoking an alleged counterfeiting defense in this case, including Cisco's stated intention to seek testimony from Dexon's witnesses about counterfeiting." Dkt. No. 215 at 1 (asserting, among other things, that Cisco waived any alleged counterfeiting affirmative defense).

"Dexon may file a motion to limit or preclude Cisco's (or CDW's) use of such evidence at the appropriate time in the case following a meet and confer."[6] *Id*. at 1-2. Cisco has since marshaled evidence relating to counterfeiting, and Dexon has filed a corresponding motion *in limine*.

The above history shows that the defense of counterfeiting was brought "at a pragmatically sufficient time" such that Dexon had sufficient notice to prepare for and contest the defense. *Smith*, 932 F.3d at 309. Dexon has been free to pursue discovery into these matters and has noticed the depositions of multiple Cisco witnesses who are responsible for the enforcement of Cisco's brand protection measures. Dexon also questioned the first nonparty witness deposed about Dexon's own sales of alleged counterfeit equipment to that nonparty (a Texas car dealership). Dexon retained and proffered an anti-counterfeiting expert, Denise Mosteller, who provides "consulting services on authorized reseller programs, pricing programs, [and] anti-counterfeiting efforts and strategies. . . ." *See* Dkt. No. 427 at 3; *see also* Dkt. No. 427-7 (Mosteller Rebuttal Report), ¶ 1. An entire section of her report is "Dexon Has Taken Reasonable Efforts To Prevent Counterfeit." Mosteller Rebuttal Report at Part VI.

Moreover, Cisco needs to raise some aspects of the counterfeiting issue because Dexon's claims in its complaint first raised the issue. For example, Dexon alleges Cisco falsely tells customers that Dexon traffics "bootleg" networking equipment. Am. Compl. (Dkt. No. 175), ¶ 6. Dexon alleges such FUD statements are part of Cisco's anticompetitive conduct that denigrates "the reputation and quality of Dexon's goods," even though Dexon provides "quality service." *Id*., ¶¶ 61, 71. Dexon further alleges Cisco does not have a "legitimate business purpose for its

---

[6] The May 25, 2023 Order advised that the more closely aligned Cisco's questions are to the allegations raised in Dexon's Amended Complaint (*see*, *e.g*., Dkt. No. 175, ¶ 6, Dexon's contention that Cisco wrongly claimed that unfavored resellers sell "bootleg," "unauthorized," or "Cisco" equipment with "malware" or "spyware"), the more likely the evidence is to remain in this case following evidentiary rulings during the pretrial conference. Dkt. No. 218 at 2.

anticompetitive conduct." *Id.*, ¶ 112. These allegations squarely put at issue Cisco's conversations with end customers, the accuracy of those conversations, and the end customers' reasons for not purchasing Cisco equipment through Dexon. Dexon's request would allow Dexon to claim Cisco falsely told end customers that Dexon sells "bootleg" equipment while preventing Cisco from offering its side of that story (i.e., whether that statement was true and the possible effects of negative consequences of purchasing counterfeit equipment).

For the above reasons, to the extent necessary for Cisco to plead the issue of counterfeiting as an affirmative defense, it has done so.

### *Alleged Discovery Violations Do Not Discount Dexon's Fair Notice*

Likely due to the above notice of counterfeiting, Dexon also argues Cisco's alleged disclosure and discovery violations constitute waiver of the purported unpled affirmative defense of counterfeiting.

For example, in its first supplemental brief, Dexon relies on the timing of an April 28, 2023 letter from Cisco to a third party (Dkt. No. 260-1) in the California Lawsuit as confirmation that "at the time of its Answer [in this case,] Cisco had facts that it believed supported its counterfeiting contentions against Dexon, but actively did not plead them." Dkt. No. 260 at 1-2. That letter contained a list of products Dexon sold to the third party that Cisco claims are counterfeit. According to Dexon, that letter "unequivocally establishes waiver" because Cisco could have put those factual allegations in its answer. *Id.* at 2. Dexon also asserts Cisco failed to timely produce documents that are "squarely relevant to its purported counterfeiting defense," noting the April 28 letter (and 1,900 other documents) were "not produced to Dexon until June 20, on the eve before the first-scheduled [third party] deposition (that was later moved to the following week)." *Id.*

Dexon asserts Cisco's failure to meet its discovery obligations in this case provides further grounds for denying Cisco leave to replead its answer. *Id.*

Similarly, in its second supplemental brief, Dexon asserts Cisco's pretrial disclosures (including trial exhibits and witness lists) "confirm Cisco's intention to hide the ball on its purported counterfeiting defense until ambushing Dexon at Trial with a case that it intentionally did not plead in its Answers to Dexon's Original Complaint and Amended Complaint." Dkt. No. 411 at 1. Arguing unfair surprise and prejudice, Dexon reiterates its request that its motion to strike be granted without permitting Cisco leave to amend its answer. According to Dexon, if Cisco had pleaded its purported counterfeiting defense as required, Dexon would have had the opportunity to retain its own expert bearing upon the reliability of Cisco's purported authentication procedures. *Id.* at 6.

None of these examples supports striking the defense altogether as requested. Dexon's contention that the facts in the letter to the third party should have been in Cisco's answer does not carry the day because "[A]bsolute specificity in the pleading is not required." *DirecTV*, 2023 WL 3612351, at *3 (quoting *Automated Med. Labs. v. Armour Pharm. Co.*, 629 F.2d 1118, 1122 (5th Cir. 1980) (citing FED. R. CIV. P 8(c)). And Cisco is correct that "*discovery* misconduct – as to exhibits, document productions, and witnesses" do not relate to the adequacy of Cisco's pleading or Dexon's notice. . . ." Dkt. No. 427 at 2 (emphasis original).[7] Dexon had the opportunity to retain an anti-counterfeiting expert and it does not persuasively support its statement that Cisco's alleged lack of adequately pleading counterfeit limited that expert's testimony.

---

[7] As noted throughout this order, the details concerning what counterfeiting evidence comes in will be addressed at pretrial. Dexon has not shown any alleged discovery violations concerning specific aspects of the counterfeiting issue are so egregious that it warrants striking the issue of counterfeiting altogether, especially when the contours of the counterfeiting issue have not yet been sufficiently defined. *See, e.g.*, Dkt. No. 255 at 4 (acknowledging "broad[]" and "narrow[]" aspects of the counterfeiting issue).

In sum, finding no unfair surprise or the type of prejudice sought to be prevented by the fair notice requirement concerning the counterfeit issue, and that Cisco has not waived its right to assert counterfeiting, the Court recommends denying Dexon's request to strike the "unpled" defense of counterfeiting.

### Dexon Does Not Show Cisco's Reliance on Counterfeiting is Invalid as a Matter of Law

Dexon has suggested at times during this lawsuit that any attempts by Cisco to plead IP claims as part of this antitrust case would be invalid. *See* Dexon's response to motion to transfer (Dkt. No. 25) at 5, n. 2 ("Cisco asserts in passing that it will assert affirmative defenses that are relevant to its California action, but this attempt to invent an overlap has not been approved by any Court, nor could it result in substantial similarity between the cases given all of the antitrust specific issues at play."); Dkt. No. 62 (September 7, 2022 Hearing Transcript) at 28:8-24 (stating there should not be "two counterfeiting cases"); Dexon's response to Cisco's motion to compel ESI custodians (Dkt. No. 159) at 6 (noting the court in *Arista* struck Cisco's affirmative defense that its actions were justified due to the plaintiff's alleged patent and copyright infringement); Dkt No. 184 (March 17, 2023 Hearing Transcript) at 80:19-81:8 (stating "IP claims are not valid affirmative defenses in antitrust cases" as evidenced by the court's ruling in *Arista* and further stating Dexon had not filed a motion to strike because "those affirmative defenses ha[d] not yet been pled").

However, Dexon does not show that under the reasoning expressed in *Arista*, Cisco's affirmative defense of counterfeiting is invalid as a matter of law, or otherwise prevents Cisco from arguing one of its procompetitive justifications for its actions was to minimize counterfeiting. In the *Arista* case, Arista alleged Cisco violated antitrust and unfair competition laws. *Arista Networks, Inc. v. Cisco Sys., Inc.*, No. 16-CV-00923-BLF, 2018 WL 11606358, at *1 (N.D. Cal.

Feb. 14, 2018). Arista moved to strike Cisco's seven affirmative defenses under Rule 12(f). *Id.* at *2. Cisco's first affirmative defense asserted that Arista lacked antitrust standing because Arista's products infringed Cisco's patents and two ITC orders precluded Arista from participating in the market. *Id.* at *3. Taking Cisco's allegations as true, the issue before the court in *Arista* was whether Cisco had raised a valid affirmative defense that Arista had suffered no antitrust injury because all of Arista's products pled in the complaint infringe Cisco's patents. *Id.* at *4. Relying on a Ninth Circuit opinion which concluded that "harm suffered while being illegally on the market is still antitrust injury," the *Arista* court held Cisco could not use Arista's purported patent infringement as a "shield to breach the public policy underlying antitrust laws." *Id.* at *6-*7; *see also id.* at *9 (distinguishing Cisco's cases because they did not address the issue of whether a patent infringer who was actually participating in the market was precluded from bringing an antitrust suit). In other words, Cisco could not ignore antitrust laws in its dealings with Arista, even though Arista was infringing Cisco's patents. Instead, Cisco's remedy was to bring a patent infringement action against Arista. *Id.* at *10. The court thus concluded that patent infringement is not a defense against antitrust standing and injury and granted Arista's motion to strike Cisco's first affirmative defense. *Id.*

The *Arista* court's well-reasoned analysis under Ninth Circuit law regarding Cisco's affirmative defense against antitrust standing does not compel a finding under Rule 12(f) that Cisco's Fourth Affirmative Defense for legitimate business justifications/counterfeiting defense should be stricken.[8] In *Arista*, Cisco argued that because the antitrust plaintiff was a patent-

---

[8] Although there was no legitimate business justifications defense at issue in *Arista*, there was an affirmative defense of "bona fide business competition," which the *Arista* court struck because it was simply a denial of allegations which Arista had the burden to prove. *Arista Networks, Inc. v. Cisco Sys., Inc.*, No. 16-CV-00923-BLF, 2018 WL 11606358, at *11 (N.D. Cal. Feb. 14, 2018). In that case, Cisco conceded during oral argument that the defense was not actually an affirmative defense. *Id.* Therefore, the court granted Arista's motion to strike Cisco's bona fide business

infringer, its products should not have been in the market, and therefore it could not claim an antitrust injury and had no standing. Cisco's Fourth Affirmative Defense does not make that argument. Cisco more broadly contends it does not claim that Dexon's violation of the Lanham Act by selling counterfeit products disqualifies Dexon from antitrust relief in this suit.[9] *See* Dkt. No. 244 at 8, n. 6. Rather, Cisco argues that its conduct – towards Dexon and other purveyors of counterfeit "Cisco" equipment – is part of Cisco's efforts to encourage end customers to purchase authentic, high-quality Cisco products, with appropriate licenses and service eligibility. *Id.* at 13-14. This argument is relevant to both Dexon's allegations and Cisco's Fourth Affirmative Defense as explained above. Even the court in *Arista* acknowledged the possibility that patent infringement could be relevant to other aspects of the case (aside from antitrust injury and standing), further undercutting Dexon's reliance on *Arista* to completely remove the issue of counterfeiting here. *See Arista*, 2018 WL 11606358, at *11.

For all these reasons, the Court recommends Dexon's motion to strike Cisco's Fourth Affirmative Defense and any purported "unpled" affirmative defense of counterfeiting be denied.

---

competition and two other similar affirmative defenses; however, the court made it clear that "this ruling does not bar Cisco from arguing the allegations contained in those defenses when Arista presents its antitrust case." *Id.*

Here, although Dexon argues Cisco's Fifth, Sixth, and Ninth Affirmative Defenses should be stricken based on this portion of the *Arista* case, Dkt. No. 234 at 7, Dexon does not allege Cisco's Fourth Affirmative Defense for legitimate business justifications should be stricken for that reason.

[9] Contrary to Cisco's contention, its unclean hands and mitigation defenses, which admittedly were not the focus of the briefing, appear to run afoul of the well-reasoned analysis in *Arista*. The undersigned fails to see the practical difference between Cisco arguing in *Arista* that a patent infringer could not have suffered an antitrust injury because of its infringement with Cisco arguing here that a counterfeiter could not recover for an antitrust injury because it failed to mitigate its damages or had unclean hands due to its sale of counterfeit goods. *Compare* Dkt. No. 244 at 10-12 (Cisco explaining its unclean hands and mitigation defense) *with* Dkt. No. 244 at 13 (Cisco stating it is not running afoul of *Arista*). Cisco should consider *Arista's* analysis in the context of any further meet and confer regarding those defenses.

**B.    Cisco's Remaining Affirmative Defenses**

Considering the focus of the briefing has been on the counterfeiting issue addressed above in the context of Cisco's Fourth Affirmative Defense, and further considering Dexon's failure to properly meet and confer regarding the remaining affirmative defenses at issue in Dexon's motion, the Court declines to spend limited judicial resources addressing the remaining affirmative defenses at this time. However, the Court can quickly address Dexon's motion to strike Cisco's Eleventh and Twelfth Affirmative Defenses (res judicata and collateral estoppel defenses). Although those affirmative defenses contain no factual allegations to provide notice on how Cisco intends to rely on those defenses, at the motion to dismiss stage, the parties litigated the issue of whether the litigation in California has preclusive effect in this litigation. Thus, this is a situation where "merely pleading the name of the affirmative defense" is sufficient to provide Dexon fair notice. *Woodfield*, 193 F.3d at 362. Therefore, the undersigned recommends Dexon's motion to strike Cisco's Eleventh and Twelfth Affirmative Defenses be denied.[10]

Finding benefit in the meet and confer process, the undersigned recommends Dexon's motion to strike Cisco's Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Affirmative Defenses be denied without prejudice to refiling following such a conference. To aid the parties in that endeavor, the Court provides the following guidance:

- Cisco's Fifth, Sixth, and Ninth Affirmative Defenses appear to be denials of elements of Dexon's *prima facie* case and as such would not be actual affirmative defenses. That being said, striking those defenses would not bar Cisco from arguing the allegations contained in those defenses when Dexon presents its antitrust case.

---

[10] Even if the undersigned were to find the Eleventh and Twelfth Affirmative Defenses fail to meet the *Woodfield* standard, the better course would be to strike those defenses with leave to amend. *See Arista*, 2018 WL 11606358, at *11.

18

*See Arista*, 2018 WL 11606358, at *11 (striking defenses that were simply denials of allegations which Arista had the burden to prove). During the parties' meet-and-confer, Cisco may consider withdrawing these defenses.

- Cisco's Seventh, Eighth, and Tenth Affirmative Defenses for laches, unclean hands, and mitigation are so broad that they fall short of the minimum particulars and fail to provide enough information to alert Dexon to what the alleged problem is as to prevent unfair surprise, and unclean hands and mitigation defenses may run afoul of the reasoning in *Arista* (*see* note 9, *supra*). *See Pem-Air Turbine Engine Servs. L.L.C. v. Gupta*, No. 3:21-CV-00180-L, 2022 WL 2835840, at *5 (N.D. Tex. July 19, 2022) (citing *Woodfield*, 193 F.3d at 362 (finding "baldly naming the broad affirmative defenses of [ ] and 'waiver and/or release' falls well short of the minimum particulars needed to the identify the affirmative defense in question. . . ."); also citing *Software Publishers Ass'n v. Scott & Scott, L.L.P.*, No. 3:06-cv-0949-G, 2007 WL 2325585, at *2 (N.D. Tex. Aug. 15, 2007) (finding bald assertions that plaintiff's claims were barred "'by the doctrines of waiver, estoppel, and ratification,' 'by the doctrine of laches,' and due to the plaintiff's 'unclean hands' do not provide [defendant] with 'fair notice' of the defenses being advanced.")). However, it is unclear from the Court's review of the Joint Pretrial Order if and how Cisco intends to rely on the affirmative defenses. To the extent Cisco does intend to rely on one or more, Cisco is allowed leave to replead those

affirmative defenses with more particularity and must do so on or before December 14, 2023.[11]

- If Dexon wishes to file a second motion to strike as to any of Cisco's Fifth through Tenth Affirmative Defense, it must do so by December 21, 2023, while also submitting an agreed briefing schedule.

## IV. RECOMMENDATION

Based on the foregoing, it is

**RECOMMENDED** that Dexon Computer, Inc.'s Motion to Strike Cisco's Affirmative Defenses Pled in its Answer to Dexon's Amended Complaint (Dkt. No. 234) be **DENIED** as to Cisco's Fourth, Eleventh, and Twelfth Affirmative Defenses and any purported "unpled" affirmative defense of counterfeiting and **DENIED without prejudice** to refiling as to Cisco's Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Affirmative Defenses.

### Objections

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

---

[11] To the extent Cisco agrees to withdraw any affirmative defense(s), it shall so notify the Court by that same date.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

SIGNED this the 8th day of December, 2023.

J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE