IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| DEXON COMPUTER, INC. | § | |
| | § | |
| Plaintiff | § | |
| | § | CASE NO. 5:22-CV-00053-RWS-JBB |
| v. | § | |
| | § | |
| CISCO SYSTEMS, INC., *ET AL.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is Defendant Cisco's Objections (Docket No. 512) to the Magistrate Judge's Order Regarding Undisclosed Damages (Docket No. 491, the "Order"). The objections have been fully briefed. Docket No. 520. For the reasons set forth below, Cisco's objections (Docket No. 512) are **OVERRULED**.

## BACKGROUND

Plaintiff Dexon filed the above antitrust case against Defendants Cisco and CDW.[1] Cisco filed a Rule 37 motion, requesting the Court (1) prohibit Dexon from presenting evidence of an "undisclosed" damages theory (that Cisco's conduct caused general reputational harm to Dexon both inside and outside the alleged relevant markets) and (2) strike those portions of Dexon's expert reports. Docket No. 328 at 1-2.

The Magistrate Judge entered the Order denying Cisco's Rule 37 motion and explaining that Cisco had "not persuasively shown that Dr. Maness's [Dexon's economic expert's] reference to Dexon's reputation converts his lost-profits damages model to a damages model based on

---

[1] Plaintiff Dexon and Defendant CDW have reached a settlement agreement in principle. *See* Docket No. 496.

reputation or that Dr. Maness's consideration of 'consequential sales' reflects a new theory" and therefore Dexon did not fail to timely disclose its damages theory under Rule 26. Order at 10. According to the Magistrate Judge, even assuming there was a disclosure violation, exclusion would not be warranted under Rule 37's four-factor test. *Id.* Cisco objected (Docket No. 512) to the Order and Dexon filed a response (Docket No. 520) to Cisco's objections.

## LEGAL STANDARD

### I. Standard of Review

Federal Rule of Civil Procedure 72(a) governs review of objections to a magistrate judge's non-dispositive order. Rule 72(a) provides, in pertinent part, that "[t]he district judge . . . must . . . modify or set aside any part of the [magistrate judge's] order that is clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Poe v. Bock*, No. EP-17-CV-00232-DCG, 2018 WL 4275839, at *2 (W.D. Tex. Sept. 7, 2018) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); citing *St. Aubin v. Quarterman*, 470 F.3d 1096, 1101 (5th Cir. 2006) ("A finding is clearly erroneous only if it is implausible in the light of the record considered as a whole.")).

### II. Required Disclosures During Discovery

Federal Rule of Civil Procedure 26(a) states that "a party must, without awaiting a discovery request, provide to the other parties . . . the name . . . of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." FED. R. CIV. P. 26(a)(1)(A)(i). Furthermore, a party has a duty to supplement disclosures, "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective

information has not otherwise been made known to the other parties during the discovery process or in writing. . . . " *Realtime Data L.L.C. v. EchoStar Corp.*, No. 6:17-CV-00084-JDL, 2018 WL 6257472, at *1 (E.D. Tex. Nov. 15, 2018) (quoting FED. R. CIV. P. 26(e)(1)(A)). The Court's Discovery Order further requires the parties to provide "a complete computation of any category of damages claimed by any party to the action, making available for inspection and copying as under Rule 34, the documents or other evidentiary material on which such computation is based, including materials bearing on the nature and extent of injuries suffered." Docket No. 65 ¶ 3(b); *see also id*. ¶ 9 (requiring timely supplementation).

An expert required to provide a written report must include a "complete statement of all opinions the witness will express and the basis and reasons for them." *Firtiva Corp. v. Funimation Glob. Grp., L.L.C.*, Civil Action No. 2:21-CV-00111-JRG-RSP, 2022 WL 1792818, at *1 (E.D. Tex. June 1, 2022) (quoting FED. R. CIV. P. 26(a)(2)(B)(i)). Parties must provide their expert disclosures "at the times and in the sequence that the court orders." *Id.* (quoting FED. R. CIV. P. 26(a)(2)(D)).

III.    **Untimely or Insufficient Disclosures**

Federal Rule of Civil Procedure 37 sets the consequences of untimely or insufficient disclosure by a party: "[T]he party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." *CEATS, Inc. v. TicketNetwork, Inc.*, Civil Action No. 2:15-CV-01470-JRG-RSP, 2018 WL 453732, at *3 (E.D. Tex. Jan. 17, 2018) (quoting FED. R. CIV. P. 37(c)(1)). Rule 37 also "empowers the courts to impose sanctions for failures to obey discovery orders." *Estech Sys., Inc. v. Target Corp.*, No. 2:20-CV-00123-JRG-RSP, 2021 WL 5154220, at *3 (E.D. Tex. July 21,

2021) (quoting *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012)).

Four factors guide the Court's exercise of discretion in evaluating whether to exclude evidence under Rule 37. *Id.* (citing *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 280 (5th Cir. 2009)). These factors are: "(1) [the untimely party's] explanation for its failure to disclose the evidence, (2) the importance of the evidence, (3) the potential prejudice to [the objecting party] in allowing the evidence, and (4) the availability of a continuance." *Id*.

A district court has "broad discretion" in imposing a sanction pursuant to Rule 37, and a district court's decision "will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, No. 2:17-CV-00651-JRG, 2019 WL 2267212, at *3 (E.D. Tex. May 28, 2019) (quoting *Moore v. CITGO Ref. & Chemicals Co., L.P.*, 735 F.3d 309, 315 (5th Cir. 2013)). "Rules 26 and 37 operate jointly to create a 'federal discovery scheme' that assigns 'broad discretion' to district courts with respect to 'their control of timing and sanctions for noncompliance.' " *Id.* (citing *Passmore v. Baylor Health Care Sys.*, 823 F.3d 292, 294–95, 296–97 (5th Cir. 2016)).

**DISCUSSION**

Cisco objects that the Order clearly erred by excusing Dexon's failure to disclose its "reputational-harm theory" in its amended Rule 26 disclosures. Docket No. 512 at 1. The Order found that Dexon had not affirmatively misled Cisco (or the Court) as to its damages theories and that Dr. Maness's damages computation is not inconsistent with Dexon's Rule 26 disclosures. *See* Order at 9-10. Cisco disagrees.

Cisco first argues that Dexon, throughout fact discovery, disclosed lost-profit damages arising from specific customer transactions; yet, according to Cisco, Dr. Maness's entire theory of

damages is that Cisco's conduct—supposedly spreading "FUD" to discrete customers—degraded Dexon's marketwide reputation such that unidentified customers bought less Cisco equipment from Dexon that they would have otherwise. Docket No. 512 at 2–3. Cisco maintains that "Dexon never disclosed that theory, which led [Cisco] to take discovery focused on the damages Dexon allegedly suffered when it lost sales to specific customers identified in the complaint and disclosure." *Id.* at 3. Cisco asserts the Order does not explain how Dexon timely disclosed its actual damages theory, even acknowledging that "Dexon's amended disclosures could have been clearer, because they do suggest a customer by customer model." *Id.* at 1 (quoting Order at 10).

Dexon's initial disclosures claimed a "detailed computation of damages will be provided upon designation of experts in accordance with the Court's Docket Control Order" and that in general, "Dexon will be claiming damages in [the] form of lost profits due to the anticompetitive conspiracy of Cisco and CDW, as well as the monopolistic actions of Cisco." *See* Order at 3. Cisco's underlying motion focuses on two references to Dexon's reputation in Dr. Maness's opening report to claim Dr. Maness presents a damages model based on "general reputational harm" rather than a lost-profits damages model. However, as urged by Dexon in its response to Cisco's motion, a passing reference to Dexon's reputation does not change the substance of Dr. Maness's analysis, which is consistent with Dexon's disclosures.

As was determined by the Magistrate Judge, although Dexon's disclosures might have been clearer, Cisco has not persuasively shown that Dr. Maness's references to Dexon's reputation converts Dr. Maness's lost-profits damages model to a damages model based on reputation generally or that Dr. Maness's consideration of "consequential sales" reflects a new theory. Order at 10. As explained by the Magistrate Judge later in the Order, Dr. Maness's report does not focus on "reputation" in determining Dexon's lost-profit damages. It was principally based on evidence

of specific incidents of Defendants' alleged anticompetitive actions and Dexon's financial data—material that Cisco has had in its possession for over a year and was able to address in either expert rebuttal or reply reports. *Id.* at 11.

Cisco's objections fail to show error in the Order's overriding point—that Dr. Maness's damages model, while referencing Dexon's reputation, is consistent with Dexon's disclosure of a lost-profits damages theory. Relatedly, Cisco argues the Order provides "scant analysis" of Dexon's failure to disclose that it would seek damages for lost sales due to general reputational harm outside the alleged markets. Docket No. 512 at 3–4. According to Cisco, Dexon resisted document discovery on the ground that out-of-market products are irrelevant.[2] *Id*. at 3.

Even though the Order did not address at length the "out-of-market" aspect of Dexon's damages theory, the Magistrate Judge noted Dexon had provided Defendants, at the outset of this case, all financial data relevant to this case. Order at 8. According to Dexon, "these data included all of Dexon's sales because Defendants' conduct had an impact on the company as a whole." *Id.* (citing Docket No. 354 at 1–2). The Court is unpersuaded that Dr. Maness's damages model, which uses consequential sales to capture the full extent of loss to Dexon as a result of Cisco's alleged anticompetitive conduct, is inconsistent with Dexon's disclosure of a lost-profits damages theory. However, even if the Court were to agree with Cisco that Dexon failed to timely disclose a substantial portion of its damages theory (i.e., its "out-of-market harm theory"), the Court agrees with the Magistrate Judge's separate conclusion that any failure to disclose such aspect of its damages theory would be harmless under Federal Rule of Civil Procedure 37.

---

[2] This argument incorrectly implies there was a specific argument made by Dexon that all out-of-market products are irrelevant for any and all purposes.

On that note, Cisco argues the Order clearly erred in finding any failure to disclose was harmless under Rule 37. Docket No. 512 at 4-5. Focusing on the prejudice factor, Cisco contends Dexon's failure to disclose had "serious consequences for fact discovery" because Cisco "focused on the customer-by-customer theory of harm rather than taking nonparty discovery on Dexon's reputation or on whether nonparties would have bought more Cisco gear from Dexon despite alleged 'FUD' directed to customers." *Id.* at 4. Cisco further asserts that Dexon shielded itself from potential fact discovery into out-of-market sales. *Id.*

This is not a case where a party waited until just before trial to present new opinions. Dexon's Rule 26 disclosures showed that Cisco's alleged actions cost Dexon profits and then explained some of the financials associated with the customers in the complaint. Dr. Maness's model shows Dexon sells a lower percentage of Cisco products, allegedly because of Cisco's anticompetitive conduct, and substantiates that with sales data and specific customer examples. Cisco has had the same sales data and specific customer examples during fact discovery. Cisco's objection is unclear as to what additional fact discovery it would have pursued if Dexon had disclosed more. Cisco's claim of unspecified prejudice was not sufficiently developed before the Magistrate Judge. The Court does not find any clear error in the Magistrate Judge's weighing of this factor or in the ultimate conclusion regarding Cisco's ability to adequately address the specific theories in Dr. Maness's reports.

For the explanation factor, the Order found Dexon has sufficiently explained any failure to timely disclose, to the extent there was such a failure. Order at 11. The Magistrate Judge further accepted Dexon's explanation as to how the opinions reflected in Dr. Maness's report are consistent with Dexon's theory throughout this litigation. In its objection, Cisco points out that the Order credits Dexon's assertion that "in complex matters like this one, it is common for damages

calculations to be disclosed through experts." Docket No. 512 at 4 (quoting Order at 11). However, Cisco argues the issue is not about Dr. Maness's calculation of damages but rather Dexon's failure to disclose at least a substantial portion of its damages theory. *Id.* at 4–5. Again, Cisco does not show clear error in the Magistrate Judge's weighing of this factor.

Cisco then argues that the importance factor was not met because "Dexon can still pursue *millions* in damages for lost profits on a customer-by-customer basis (*i.e.*, the damages theory it disclosed during fact discovery) without its undisclosed damages theory." Docket No. 512 at 5 (emphasis original). In other words, Cisco argues it is legally irrelevant whether Dr. Maness's model is "critical" to Dexon's damages theory. Although the expert witness opinions at issue may not be vital to Dexon's ability to pursue at least some damages for lost profits, the importance of the opinions still weighs toward allowing the opinions.

For the final factor, continuance, Cisco argues the Order did not address the availability of a continuance to cure the failure to disclose, which, according to Cisco, should weigh heavily in favor of exclusion. *Id.* However, this factor considers the availability of a continuance to cure prejudice in allowing the evidence. The Magistrate Judge found the prejudice factor weighed in favor of allowing the opinions. Without a finding of prejudice, there would be no need to consider the availability of a trial continuance. This is simply not a situation where a trial continuance would be the preferred means of dealing with any prejudice, *see Mattingly v. Home Depot U.S.A., Inc.*, No. 1:08-CV-341, 2009 WL 10676774, at *4 (E.D. Tex. May 19, 2009) (noting the Fifth Circuit has "'repeatedly emphasized that a continuance is the preferred means of dealing with a party's attempt to designate a witness out of time'"), especially when the Magistrate Judge found such prejudice lacking and neither party viewed the availability of a trial continuance as an option. *See* Docket No. 328 at 15 ("The schedule is already extremely compressed, and it is simply not possible

to redo party and nonparty discovery in the time available."); *see also* Docket No. 354 at 14 ("assuming *arguendo* that Defendants were somehow prejudiced (which Dexon maintains they were not), a brief continuance, without delay of the Trial is the appropriate course. . . .").

In sum, the Order correctly determined that the factors weigh against relief under Rule 37.

**CONCLUSION**

For the reasons set forth above, the Court is of the opinion that the findings and conclusions of the Magistrate Judge's Order are not clearly erroneous or contrary to law. Accordingly, it is

**ORDERED** that Defendant Cisco's Objections (Docket No. 512) to the Magistrate Judge's Order Regarding Undisclosed Damages are **OVERRULED**.

**So ORDERED and SIGNED this 19th day of January, 2024.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE