IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| DEXON COMPUTER, INC., | § | |
| | § | |
| Plaintiff | § | |
| | § | CASE NO. 5:22-CV-00053-RWS-JBB |
| v. | § | |
| | § | |
| CISCO SYSTEMS, INC., *ET AL.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is Defendant Cisco's Objections (Docket No. 515) to the Magistrate Judge's Order Regarding Expert Motions (Docket No. 506, the "Order"). The objections have been fully briefed. Docket No. 518. For the reasons set forth below, Cisco's objections (Docket No. 515) are **OVERRULED**.

## BACKGROUND

Plaintiff Dexon filed the above antitrust case against Defendants Cisco and CDW.[1] The parties moved to exclude certain damages opinions of the other side's economic expert. The Magistrate Judge's Order denied Defendants' motion and granted-in-part and denied-in-part Dexon's motion. Order at 23–24. Cisco objected (Docket No. 515) to the Order and Dexon filed a response (Docket No. 518) to Cisco's objection.

---

[1] Plaintiff Dexon and Defendant CDW have reached a settlement agreement in principle. *See* Docket No. 496.

# LEGAL STANDARD

## I. Standard of Review

Federal Rule of Civil Procedure 72(a) governs review of objections to a magistrate judge's non-dispositive order. Rule 72(a) provides, in pertinent part, that "[t]he district judge . . . must . . . modify or set aside any part of the [magistrate judge's] order that is clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Poe v. Bock*, No. EP-17-CV-00232-DCG, 2018 WL 4275839, at *2 (W.D. Tex. Sept. 7, 2018) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); citing *St. Aubin v. Quarterman*, 470 F.3d 1096, 1101 (5th Cir. 2006) ("A finding is clearly erroneous only if it is implausible in the light of the record considered as a whole.")).

## II. Federal Rule of Civil Procedure 702

Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods to the facts of the case.

FED. R. EVID. 702. In accordance with Federal Rule of Evidence 104(a), when faced with expert testimony, the trial court acts as a "gatekeeper" and must perform "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–95 (1993).

The court's analysis focuses on the reasoning or methodology employed by the expert, not the ultimate conclusion. *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997). The purpose is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606, 618 (5th Cir. 1999) (quoting *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 119 (1999)). Thus, the court "must review only the reasonableness of the expert's use of such an approach, together with his particular method of analyzing data so obtained, to draw a conclusion regarding the specific matter to which the expert testimony is directly relevant." *American Tourmaline Fields v. International Paper Co.*, 1999 WL 242690 at *2 (N.D. Tex. Apr. 19, 1999) (citing *Kumho Tire Co.*, 526 U.S. at 153).

As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned to that opinion rather than its admissibility. *See* FED. R. EVID. 702 Advisory Committee's Notes, 2000 Amendments (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)). While the district court must act as a gatekeeper to exclude all inadmissible expert testimony, "the rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702 Advisory Committee's Notes (2000) (citing *Daubert*, 509 U.S. 579; *Kumho Tire Co.*, 526 U.S. 137). Importantly, in a jury trial setting, the court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; rather, the court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law)

("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony.").

## DISCUSSION

Cisco objects that the Order denying Cisco's motion to limit the testimony of Dexon's economic expert, Dr. Maness, and granting-in-part Dexon's motion to exclude certain damages opinions of Cisco's economic expert, Dr. Ugone, is "clearly erroneous" and "contrary to law." Docket No. 515 at 1.

*First*, Cisco argues the Order clearly erred by denying Cisco's motion as to Dr. Maness. At issue in Cisco's *Daubert* motion is Dr. Maness's calculation in his opening report of Dexon's claimed monopolization damages. The Order found that "Cisco's challenge to Dr. Maness's opinions goes to one of the inputs of Dr. Maness's model, and further considering Dr. Ugone proposed no alternative damages method," *see Greene v. Gen. Foods Corp.*, 517 F.2d 635, 665 (5th Cir. 1975), "the Court does not find exclusion warranted." *See* Order at 15.

Cisco asserts the Order incorrectly rules that Cisco's challenge as to Dr. Maness's benchmark goes to one of the inputs of Dr. Maness's model, presenting a question of weight rather than methodological reliability. Docket No. 515 at 1. Specifically, Cisco contends "Dr. Maness did not explain why his benchmark was sufficiently stable in the *before* period to warrant its use in the *after* period, a classic question of methodology suited exclusion under Federal Rule 702." *Id.* (emphasis original). Cisco further asserts that the Order unduly narrows the issue by characterizing Cisco's motion as disputing "one of the inputs used for Dr. Maness's model." *Id.* According to Cisco's objection, the "defect is the entire model, not merely one input." *Id.*; *see also id.* at 4 (stating "the error in Dr. Maness's model is . . . it is devoid of methodological reliability in reaching" the damages figure). Among other things, Cisco argues Dr. Maness does not explain

why it is appropriate to begin the analysis in 2014, "let alone why the admitted swings over the entire before period are methodologically excusable, let alone whether the relationship is sufficiently stable to be reliable." *Id.* at 2–3.

But Cisco's objection does not address the Magistrate Judge's finding that "Cisco's motion does not challenge Dr. Maness's use of the before and after method, [and Cisco's expert] Dr. Ugone does not address the before and after method." Order at 14. Given that the before and after method is an indisputably valid damages methodology that Dr. Maness used (*id.* at 6–7), Cisco's core assertion, that there "is the absence of a methodology to explain" (Docket No. 515 at 4) the damages calculation, is without basis.

Cisco further asserts "the Order discredits (at 14) the actual examination that Dr. Ugone undertook as to Dexon's benchmark on the ground that he 'focus[es] on a sub-period within the damages calculation (relevant market sales between 2011 and 2013, which vary more significantly, rather than from 2011 to 2018).' " *Id.* at 3. In its objection, Cisco states Dr. Ugone considered the entire period, showing significant swings and instability throughout, and also critiqued Dr. Maness for omitting the 2011–2013 part of the before period, "explaining that there is no stability during those years *or* the 2014–2018 period on which Dr. Maness focuses without methodology or explanation." *Id.* (emphasis original).

Cisco's focus on the time period that Dr. Ugone would prefer to use for the "before" period does not address the Magistrate Judge's holding that "Dexon persuasively argues that Dr. Maness's view of the data is appropriately considered by the jury and Dr. Ugone's alternative focus on a sub-period within the damages calculation (relevant market sales between 2011 and 2013, which vary more significantly, rather than from 2011 to 2018) is the type of issue appropriately addressed

on cross-examination." Order at 14–15. This finding correctly applied binding Fifth Circuit law, and Cisco's objection does not justify exclusion under *Daubert*.

*Second*, Cisco argues the Order granting-in-part Dexon's motion as to Dr. Ugone is contrary to law. Docket No. 515 at 4–5. In its *Daubert* motion, Dexon moved to exclude seven paragraphs of Dr. Ugone's rebuttal report (and related testimony that he might offer at trial) related to two main opinions: (1) Dr. Ugone's testimony that Dr. Maness's damages model might be incapable of distinguishing between the effects of lawful and unlawful conduct (damages-breakdown opinion); and (2) Dr. Ugone's testimony that Dr. Maness fails to put forward a but-for world reconstruction opinion. The Magistrate Judge granted Dexon's motion in limited part with respect to Dr. Ugone's criticism of Dexon's failure to apportion. Order at 21; *see also id.* at 21, n. 7 (explaining the ruling "most clearly applies" to paragraphs 197–98 rather than paragraphs 196 and 199 of Dr. Ugone's rebuttal report and to Dr. Ugone's cited deposition testimony explaining those opinions; but further noting Dexon could raise the issue with Judge Schroeder with respect to paragraphs 196 and 199, if warranted following a meet and confer with Cisco).

The Magistrate Judge explained his reasoning as follows:

> The parties somewhat argue past each other. Both sides appear to agree that Dr. Maness is not required to apportion his total damages estimate to each type of allegedly anticompetitive conduct while also agreeing that Dexon cannot recover for lawful conduct. That begs the question of what happens to Dr. Maness's damages estimate, which assumes all the complained of conduct is unlawful, if the jury (or Court) considers some of the complained conduct lawful? One outcome would be to simply reduce the damages estimate. And were Dr. Ugone's criticisms limited to a claim that Dr. Maness's damages estimate is overinclusive by potentially including damages resulting from Cisco's lawful conduct, that likely would be permissible. But he goes further than arguing for a haircut, and instead states that Dr. Maness's model is "unreliable" or that he "doesn't have [a model]" in that situation. These are the types of arguments found in lawyer's *Daubert* or post-trial motions, not statements from experts to the jury.

> . . . Cisco's claim is that Dr. Maness's model possibly violates antitrust law—there is a time and place for such an argument, and it is not through its expert in front of the jury. Cisco is free to argue to the jury that Dr. Maness's damages model is too uncertain (while Dexon is free to argue the opposite). Cisco is also free to argue or confirm, at least through cross and in closing, that Dr. Maness's model is inflated by assuming that all of the complained conduct is unlawful (while again, Dexon is free to show the opposite). But Cisco may not make *Daubert*-style arguments to the jury through its expert. This is particularly true here, where, despite Cisco's claim to the contrary, Dr. Ugone comes dangerously close to stating that Dr. Maness must apportion, in possible contravention of the law.

*Id.* at 20–21.

In its objection, Cisco cites Dr. Ugone's deposition testimony—cited (at 18) in the Order—that Dr. Ugone intends to inform the jury that "Dr. Maness assumed A, B, C, D, E and F. And if D, E, and F are not found to be wrongful, he doesn't have a number, or if A, B, C isn't found to be wrongful, he doesn't have a number." Docket No. 515 at 4 (quoting Docket No. 350-2 (Ugone Dep. Tr.) at 187:18-22). According to Cisco, "[t]hat is not a legal opinion, it is not an instruction to the jury, and it is not a *Daubert* argument against Dr. Maness. . . . It is simply an accurate observation of the model." *Id*. at 4–5. Cisco contends this "fact-bound critique of Dr. Maness's model" does "not supplant the role of the Court or fact-finder simply because the observation Dr. Ugone makes is consistent with and helpful to the jury in applying well-established Fifth Circuit law – which Dr. Ugone has never disclosed discussing himself. . . ." *Id*. at 5.

Again, Cisco's objection does not address the holding that "Cisco may not make *Daubert*-style arguments to the jury through its expert." Order at 21. In a footnote, the Magistrate Judge noted Cisco's argument that "the question is not whether Dr. Maness was required to apportion damages, but whether Dr. Ugone is foreclosed from informing the jury of the truthful fact that he did not." Order at 21, n.6 (quoting Docket No. 368 at 2). However, the Magistrate Judge explained that "Dr. Ugone does more than simply inform the jury of a fact that does not appear to be disputed—he faults Dr. Maness for not placing a dollar value on each type of alleged

anticompetitive conduct and concludes his model is 'unreliable' (as opposed to 'inflated') for failing to do so." *Id.* (citing Ugone Rebuttal Report, ¶ 198 ("Put differently, Dr. Maness has not provided claimed damages numbers for different potential liability outcomes. This renders his damages estimates unreliable if a subset of Cisco's alleged individual conduct or coordinated conduct is found not to be wrongful . . . .")). The Magistrate Judge reasoned the only way to address that criticism is to apportion, pointing out Dexon had cited several out-of-circuit opinions suggesting that antitrust damages models need not apportion, while acknowledging the Fifth Circuit has not directly ruled on this issue. *Id.* (citing Docket No. 329 at 5–6). Further noting Cisco does not directly contest Dexon's cited case law for that principle, the Magistrate Judge stated "even this uncertainty, if any, further confirms this argument is for the Court, not the jury." *Id.*

In Dexon's response to Cisco's objection, Dexon asserts "Cisco's present brief cannot undo the incorrect opinions that Dr. Ugone expressed in his expert report and at his deposition that Dr. Maness was required to disaggregate damages by each type of conduct to be reliable." Docket No. 518 at 2. The Court agrees. Cisco's objection is overruled.

## CONCLUSION

For the reasons set forth above, the Court is of the opinion that the findings and conclusions of the Magistrate Judge's Order are not clearly erroneous or contrary to law. Accordingly, it is

**ORDERED** that Defendant Cisco's Objections (Docket No. 515) to the Magistrate Judge's Order Regarding Expert Motions are **OVERRULED**.

**So ORDERED and SIGNED this 19th day of January, 2024.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE